**HERBERT HARVEY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 20780.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 25, 1967.

Decided Oct. 26, 1967.

Mr. Stanley R. Strauss, Washington, D. C., with whom Mr. Kenneth C. Mc-Guiness, Washington, D. C., was on the brief, for petitioner.

Mr. Gary Green, Atty., N. L. R. B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Theodore Martineau, Atty., N. L. R. B., were on the brief, for respondent.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER and McGOWAN, Circuit Judges.

WILBUR K. MILLER, Senior Circuit Judge:

Pursuant to a contract with the International Bank for Reconstruction and Development, commonly called the World Bank, Herbert Harvey, Inc. provides operating and maintenance services at a complex of buildings in the District of Columbia owned by the World Bank, in which it maintains its principal office.

Harvey makes all repairs to the buildings and equipment requested by the Bank; it furnishes elevator, cleaning and other janitorial services; and it supervises the personnel necessary to provide these services. Harvey receives from the Bank a monthly advance in a fixed amount to cover the cost of the services it renders and, in addition, a fixed fee for its services.

From the monthly advances from the Bank, Harvey pays all costs of operation, including wages of employees, sick pay, vacation pay, social security taxes, and hospitalization and workmen's compensation insurance premiums. From the same source Harvey pays for all supplies and equipment used by it, but such supplies and equipment are the Bank's property. If Harvey's expenses are less than the amounts advanced by the Bank, the savings accrue to the Bank and there is no change in Harvey's fixed fee. Written approval must be obtained from the Bank before Harvey can incur expenses in excess of the fixed monthly advances, or before any items are purchased which increase the costs of Harvey's operations.

The Bank's office manager and his assistant have authority to issue work orders to Harvey's supervisors—an authority which they extensively exercise. Moreover, the Bank's managers frequently assign tasks directly to maintenance employees and supervise their performance. Harvey does the actual hiring of personnel, and screens job applicants, who must however satisfy hiring standards established by the Bank. No applicant is hired without specific Bank approval, if Harvey has any doubt as to whether his qualifications meet the Bank's standards. At times, the Bank directs Harvey to employ or to discharge certain individuals. Starting wages paid to Harvey's personnel are subject to the Bank's approval, as is any change in overall wage scales. Employees cannot be promoted or receive wage increases unless the Bank approves; and discharges recommended by Harvey's supervisors cannot be made without the Bank's specific authorization.

In these circumstances the Government Services Employees Union, Local 536, filed a petition with the National Labor Relations Board in which it claimed to represent Harvey's personnel at the World Bank and sought an election to determine its status. Harvey answered, asserting the Board does not have jurisdiction of matters involving labor relations at the World Bank. Harvey also contended that the Bank is an exempt organization and that its own operations are so intimately connected with the Bank that the Board should decline to assert jurisdiction. In the alternative, Harvey contended that the building maintenance personnel are not its employees, but are employees of the World Bank.

After reciting in its decision the factual situation substantially as we have outlined it, the Labor Board said:

"Although conditions of employment are thus subject to review and approval by the Bank, a considerable area of effective control remains vested in the Employer.[1] [The Board used this term to designate Harvey.] Accordingly, we find that the Employer is *an employer* of the employees involved * * *." (Our emphasis.)

The Labor Board also rejected Harvey's other contentions and ordered an election, which was held and led to the Board's certification of the union as bargaining representative.

Relying on its theory that the Board lacked jurisdiction, Harvey refused to bargain with the union, whereupon, pursuant to the latter's complaint, the Board's General Counsel charged Harvey with violating Section 8(a) (1) and (a) (5) and Section 2(6) and (7) of the National Labor Relations Act, as amended. Harvey of course admitted its refusal to bargain and stood on its original position. The Labor Board granted summary judgment to the General Counsel, found Harvey guilty of the violations charged, and ordered it to bargain with the union. Harvey petitions for review.

Thus, the sole question presented to us—and it is so stipulated by the parties—is whether the Labor Board properly asserted jurisdiction over Harvey.

The Board makes the bootstrap argument that, as it had ordered an election and, pursuant to the result thereof, had certificated the union as bargaining representative and as Harvey had refused to bargain, it was therefore guilty of the violations charged to it. This, of course, ignores the question—to which the Board stipulated—whether it properly asserted jurisdiction over Harvey.

We express no opinion on Harvey's contention that the maintenance personnel are the Bank's employees because, whether so or not, the record clearly shows a basis for a finding that Harvey and the Bank are joint employers, and counsel for the Labor Board in oral argument admitted as much. That being so, the question becomes whether the Labor Board erred in directing one of

1. The Board did not describe the "considerable area of effective control," and made no further reference to the subject.

the joint employers to bargain with the union, when it had no jurisdiction over the other employer. Had the Board adequately come to grips with the problem, it might readily have found that the bank had the dominant role in the employer combination. In these circumstances, the Board's order that Harvey bargain with the union as to wages and conditions of employment would result in futility: any agreement made by Harvey as a result of negotiations would be subject to veto by the World Bank, which has not been ordered to bargain with the union. The Bank's status as an employer was pointedly raised before the Board, but the Board's decision neither determines nor discusses the question. The Board impliedly acknowledges this possibility, however, by finding that Harvey is *an employer* instead of *the employer*.

The Labor Board frequently refuses to assert jurisdiction over employees supplying food service to exempt institutions. *See generally* Crotty Brothers, 146 NLRB 755 (1964); The Prophet Company, 150 NLRB 1559 (1965); and The Horn & Hardart Company, 154 NLRB 1368 (1965). Particularly do we find deficient the Board's failure to distinguish Specialized Maintenance Services, Inc., Case No. 22–RM–222, an unpublished decision dated March 7, 1966, where the Board made no assertion of jurisdiction which it undertakes to extend to Harvey. From that case we perceive an inconsistency which remains totally unexplained. It seems to us that, if the Bank is exempt from the Board's jurisdiction, the latter's action in this case is a complete departure from its decisions in the cases just mentioned, which appear to be indistinguishable.

From what has been said, we conclude that the Labor Board erred in failing to find the Bank to be a joint employer with Harvey, in failing to make findings as to the Bank's status—whether exempt or not—and in failing to decide whether the Bank's status, if exempt, would require it to refuse to assert jurisdiction over Harvey.

We reverse the order under review and remand the case to the Labor Board for further consideration in the light of this opinion.

So ordered.

McGOWAN, Circuit Judge (concurring):

I agree that a remand for further consideration is required. It appears that there are certain kinds of employers which the Board, for policy reasons and unaided by any explicit provision in the Act, treats as exempt. A private university is an example. This treatment in at least some cases has been extended to include other employers performing services for the exempted institution, not because the servicing employer is not a true employer but because what he is doing is of such a nature that the institution would be exempted if it were doing the same thing through its own employees.

On the record before us, I would have no reason to disturb the Board's conclusion that petitioner had an independent employment relationship with the workers in question sufficient to subject it to the Act. It seems obvious that the World Bank elected not to maintain its office building itself, and that it looked to petitioner for the performance of these functions for a price. Petitioner had to recruit and supervise the requisite workers, and it appears to have been legally liable in the first instance to pay their wages, Social Security taxes, and so on. If the World Bank were the First National, there would be no doubt in my view that petitioner was subject to the Board's jurisdiction.

But the World Bank is what it is, and I wonder whether the Board would assert jurisdiction over it if it had not contracted out its maintenance needs. If the Board would not, then I wonder whether petitioner, as an employer providing services similar to those supplied other exempted institutions and on similar terms, is not being treated differently to a degree that approaches the arbitrary. The joint employer concept, if

applicable, would presumably mean that two persons are subject to the Act rather than one. It does not appear to me to imply that, if one of such two is an exempt institution, the other must invariably be treated as exempt also, unless the Board chooses to do so. But this is a choice the Board has apparently made on some occasions, and what we need to know from the Board is whether, or why, petitioner is being treated differently. It is this to which the Board needs to address itself, and it is for this purpose that I would remand.