**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NATCHEZ TRACE ELECTRIC POWER ASSOCIATION, Respondent.**

No. 72–2286.

United States Court of Appeals,
Fifth Circuit.

April 19, 1973.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., John J. A. Reynolds, Jr., Director, Region 26, N. L. R. B., Memphis, Tenn., Kenneth B. Hipp, N. L. R. B., Washington, D. C., for petitioner.

Laurence J. Cohen, Washington, D. C., for intervenor Broth. of Elec. Wkrs., AFL–CIO.

Taylor B. Smith, Columbus, Miss., for respondent.

Before GEWIN, SIMPSON and RONEY, Circuit Judges.

GEWIN, Circuit Judge:

In this case the National Labor Relations Board has petitioned for enforcement of its order entered against respondent Natchez Trace Electric Power Association requiring the Association to bargain with the union certified by the Board. Natchez Trace is incorporated under the provisions of Mississippi's Electric Power Association Act [1] for the purpose of distributing electrical power to its members. It is a nonprofit organization, and its membership consists not only of farm and residential consumers within the predominantly rural territory it serves but also all federal, state, county, and city agencies and offices in its area. It purchases the power it distributes from the Tennessee Valley Authority.

Upon the petition of the International Brotherhood of Electrical Workers, AFL–CIO the Board ordered a representation election held among the Association's employees. In the representation proceeding Natchez Trace had objected to the Board's jurisdiction on the sole ground that as a "political subdivision" of Mississippi it was not an "employer" subject to Board jurisdiction under § 2(2) of the National Labor Relations Act, as amended by the Labor Management Relations Act of 1947.[2] When the union won the election and was certified by the Board as the bargaining representative of the Association's employees, Natchez Trace steadfastly refused to recognize and bargain with the union. An unfair labor practice proceeding followed at the conclusion of which the Board reaffirmed its position that Natchez Trace was an "employer" and not a "political subdivision" as contended. Consequently the Board held that the Association's refusal to bargain constituted an unfair labor practice violative of §§ 8(a)(1) and 8(a)(5) of the Act.[3] The critical issue in this enforcement proceeding, then, is whether Natchez Trace is a "political subdivision" within the meaning of the National Labor Relations Act. We agree with the Board that it is not and accordingly grant enforcement of the Board's order.

The term "political subdivision" is nowhere defined in the National Labor Relations Act, and the legislative history of the Act does little to remedy this deficiency other than to reveal that in enacting the § 2(2) exemption Congress meant to exclude the labor relations of federal, state, and municipal governments from Board cognizance because governmental employees did not usually enjoy the right to strike.[4] With this purpose in mind the Board has long limited the exemption for political subdivisions to entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate. The Supreme Court recently had occasion to review the Board's reading of the political subdivision exemption in NLRB v. Natural Gas Utility District of

---

1. 21 Miss.Code Ann. § 5463 et seq. (1942), as amended (Supp.1971).

2. 29 U.S.C. § 152(2) (1964 ed.) provides: "The term 'employer' . . . shall not include . . . any State or political subdivision thereof, . . . "

3. 29 U.S.C. §§ 158(a)(1) and 158(a)(5) (1964 ed.).

4. N.L.R.B. v. Natural Gas Utility District, 402 U.S. 600, 604, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971).

Hawkins County;[5] like Natchez Trace, the Hawkins County Utility District had refused to bargain with the Board-certified union on the ground that under § 2(2) of the Act it was not an employer subject to Board jurisdiction. While the Court was quick to declare that the Board's construction of the statutory term is entitled to great respect, it refused to hold that an entity must necessarily meet one or the other of the criteria deemed conclusive by the Board in order to qualify for the § 2(2) exemption. Instead it looked at a variety of factors, including the criteria emphasized by the Board, in deciding that the Hawkins County Utility District was a political subdivision and not an employer subject to Board cognizance.

In discussing the actual operations and characteristics of the Hawkins County Utility District thought to be indicative of its public character, the Court attached great significance to the fact that it was administered by a Board of Commissioners initially appointed by an elected county judge and subject to removal procedures applicable to all public officials. In this respect it was an entity administered by individuals responsible to public officials or to the general electorate, and as such it did meet one of the two criteria considered by the Board to be decisive. Other characteristics of the Hawkins County District considered of substantial importance by the Court were its power of eminent domain which could be exercised even against other governmental units, its obligation to maintain records open for public inspection and to publish an annual statement of its financial condition, and its exemption from all state, county, and municipal taxes. In addition the Hawkins County District was given an extremely broad grant of all the powers necessary for the accomplishment of its purpose capable of being delegated by the legislature and was declared by the statute under which it was established to be a "municipality." And lastly, it was required to consider any protest of the rates it charged at a public hearing and afterwards publish written findings as to their reasonableness. Viewing these characteristics in the aggregate, the Supreme Court was satisfied that the Hawkins County Utility District was so closely related to the State of Tennessee as to be a political subdivision of it within the meaning of § 2(2) of the Act.

With *Hawkins County* as our guide, we must now examine the actual formation, operations, and characteristics of respondent to determine whether they place Natchez Trace in so intimate a relationship to the State of Mississippi as to make Natchez Trace a political subdivision of that state. Under the authority of Mississippi's Electric Power Association Act private citizens can organize nonprofit corporations like respondent in order to facilitate the economical distribution of electric power. A certificate of incorporation must first be filed with the Secretary of State; the certificate is examined for illegalities by the Attorney General, and, if found satisfactory, is then submitted to the Governor for approval.[6] The Governor's approval is apparently a matter for his discretion; the statute provides no yardstick —such as requiring a showing that the "public convenience and necessity" will be served—to guide him in reaching this decision. Once the Governor's approval is obtained, operations may begin immediately.

Natchez Trace was formed according to the procedure outlined. It was not created directly by the state and is not a governmental department in the sense contemplated by the Board when it es-

5. 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971). In addition to indicating what characteristics make an entity a political subdivision, the Supreme Court in *Hawkins County* held that federal, rather than state law, governs this determination. 400 U.S. at 602–603, 91 S.Ct. 1746.

6. 21 Miss.Code Ann. § 5468 (1942).

tablished this attribute as one which qualifies an entity for the political subdivision exemption. Rather it was organized by private citizens acting pursuant to the appropriate enabling statute, and in this respect its formation was no different from that of any private corporation organized under Mississippi law.[7] In fact entities created under the Electric Power Association Act are termed "corporations", whereas the utility district in *Hawkins County* was declared by its enabling statute to be a "municipality".

The directors of a corporation formed under Mississippi's Electric Power Association Act are initially those named by the citizens filing the certificate of incorporation; they serve a three-year term without compensation. Their successors are elected by the corporation's members and also serve for three years.[8] The directors are empowered to do all things necessary or convenient in conducting the business of a corporation.[9] The Act makes no provision for their removal from office for misfeasance or nonfeasance, and, in spite of respondent's assertion to the contrary, it is by no means settled that they are "public officers" subject to removal for misconduct under § 4053 of the Mississippi Code.[10] Thus unlike the Hawkins County District, Natchez Trace is not administered by individuals who are responsible to public officials or to the general electorate; instead its directors are elected by its members and apparently are accountable only to them. The general public exercises no control over them. Not being created directly by the state and not being administered by in-

dividuals responsible to the public, Natchez Trace fails to meet either of the criteria one of which the Board requires of an entity before it can qualify for the political subdivision exemption.

Furthermore Natchez Trace possesses few of the other characteristics which the Supreme Court deemed indicative of the Hawkins County Utility District's public nature. For instance, Mississippi's Electric Power Association Act does not shield corporations formed under its provisions from state and local taxes but instead expressly provides that they are to be taxed "in the same manner and to the same extent as privately owned utilities."[11] It subjects Natchez Trace to none of the extensive public surveillance which was statutorily imposed upon the Hawkins County Utility District; it does not require Natchez Trace to maintain records open for public inspection, to publish annual statements, or to hear and respond to rate protests. All that it requires is that the Association's rates be "reasonable", apparently giving the corporation's directors broad discretion in determining whether that standard is being met.[12] In order to carry out its functions, Natchez Trace is granted, in addition to all the powers of a private corporation,[13] all power necessary or requisite for the accomplishment of its corporate purpose.[14] Specifically included in this grant is the power of eminent domain.[15] It is true that to an extent the powers delegated to Natchez Trace by the Act are similar in scope to those granted the utility district in *Hawkins County*. But Natchez Trace's eminent domain power is limited in that it cannot be exercised against other gov-

---

7. *See* 21 Miss.Code Ann. § 5309–01 et seq. (Supp.1971).

8. 21 Miss.Code Ann. § 5469 (Supp.1971).

9. 21 Miss.Code Ann. § 5470 (1942).

10. 21 Miss.Code Ann. § 4053 (1942). *See* McClure v. Whitney, 120 Miss. 350, 82 So. 259 (1919).

11. 21 Miss.Code Ann. § 5486 (1942).

12. 21 Miss.Code Ann. § 5681 (1942).

13. 21 Miss.Code Ann. § 5470 (1942).

14. 21 Miss.Code Ann. § 5473 (1942).

15. 21 Miss.Code Ann. § 5474 (1942).

ernmental bodies, and for the purposes of the political subdivision exemption the significance of this power and the others delegated to respondent by the Act is somewhat mitigated by the fact that in Mississippi all private utility companies are granted powers equal to those possessed by Natchez Trace, including a limited power of eminent domain.[16]

The foregoing analysis compels us to conclude that Natchez Trace is not a political subdivision of the State of Mississippi. Neither created directly by the state nor administered by individuals who are responsible to public officials or to the general electorate, Natchez Trace possesses neither of the characteristics one of which the Board requires of an entity before it can qualify for the § 2(2) exemption. It is markedly different from the utility district found to be a political subdivision in *Hawkins County* insofar as it is not termed a "municipality", its operations are not subject to any significant public scrutiny, and its property and revenue are not shielded from state and local taxes. In all these respects Natchez Trace resembles a private utility company far more than it does an arm of the state. Its possession of the eminent domain power does nothing to upset this resemblance because in Mississippi all private utility companies possess a similar power of eminent domain. In short we find that Natchez Trace is far less intimately related to the state than was the Hawkins County District and that instead it exists as an essentially private venture not much different from any private utility company, or other private corporation, in the State of Mississippi. Since the Board correctly determined that Natchez Trace lacks the essential attributes of a political subdivision within the meaning of § 2(2) of the Act, its order requiring respondent to bargain with the union must be enforced.

Enforcement granted.

16. *See* Mississippi Power & Light Co. v. Blake, 236 Miss. 297, 109 So.2d 657 (1959).