**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HIGHVIEW, INCORPORATED, Respondent.**

No. 77–3279.

United States Court of Appeals, Fifth Circuit.

Feb. 26, 1979.

Rehearing Granted May 2, 1979.

Elliott Moore, Deputy Associate Gen. Counsel, Walter Christian Schumann, Atty., Ruah D. Lahey, N.L.R.B., Washington, D. C., for the N.L.R.B.

Claud L. McIver, III, Charles Kelso, Michael C. Towers, Frederick R. Mann, Atlanta, Ga., for Highview, Inc.

Before BROWN, Chief Judge, and TUTTLE and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an application by the National Labor Relations Board (Board) for enforcement of its order entered against the respondent, Highview, Inc. The Board found that Highview violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (Act) by engaging in certain unfair labor practices and that Highview violated Section 8(a)(3) and (1) of the Act by discharging employee Mamie Fullens because she engaged in protected union activities. The Board's opinion and jurisdictional statement are found at 231 NLRB 1251, 96 LRRM 1184 (1977), and 223 NLRB 646, 92 LRRM 1088 (1976), respectively. For the reasons stated, we grant enforcement in part and deny enforcement in part.

## I.

Highview advances three jurisdictional arguments. First, Highview claims that it is a political subdivision and thus exempt from the Act. Second, Highview, suggests that it shares Fulton County's exemption from the Act. Finally, Highview argues that the Board should not assert jurisdiction over it because to do so would not effectuate the purposes of the Act.

A. First, Highview argues that the Board is without jurisdiction over this matter because Highview is a political subdivision and thus exempt from the Act. 29 U.S.C. § 152(2).

Highview is a non-profit corporation originally created in 1947 under Georgia law by a group of citizens who wished to provide nursing care to old people in the greater Atlanta area. The facilities used by Highview were built from the proceeds of a county bond issue [1] and the physical plant is located on county land. Highview pays no federal, state, or county taxes. The county pays the insurance on the Highview buildings and provides Highview with certain medical supplies, laundry, and maintenance services. In 1974, Highview had a gross revenue in excess of two million dollars. Of this amount approximately $88,000, or about five percent, of Highview's revenues took the form of direct county contributions.

Highview is managed by an independent, self-perpetuating board of directors. The county cannot influence the directors selection or affect the directors' decisions. The Board hires an administrator who makes all of the day-to-day management decisions. However, Highview does submit an annual report to the county, and all improvements on the county-owned facilities used by Highview must be approved by the county. Furthermore, patients who wish to enter Highview as indigents must be certified by the county.

Our review of these facts convinces us that the Board was correct in its determination that Highview is not a political subdivision. The Board has consistently applied a two-part test to determine whether an entity is a political subdivision within the ambit of the Act. The Board will find an employer a political subdivision if either (1) the entity was created directly by the state, so as to constitute a department or administrative arm of the government, or (2) if the entity is administered by individuals who are responsible to public officials or to the general electorate. *NLRB v. Natural Gas Utility District of Hawkins County,* 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971); *NLRB v. Natchez Trace Electric Power Association,* 476 F.2d 1042, 1043 (5 Cir. 1973).

It is self-evident that Highview is not a political subdivision under the first test since the record is undisputed that Highview was incorporated as a non-profit corporation by private individuals under the laws of Georgia. The second test requires an examination into the actual operation and characteristics of the employer. *NLRB v. Natchez Trace Electric Power Ass'n,* 476 F.2d at 1044. In *Hawkins County, supra,* the Supreme Court noted several factors indicative of Hawkins County Utility District's public nature. In determining that the Utility District was a political subdivision the Supreme Court noted that the District had eminent domain powers, was exempt from local taxes, was statutorily declared to be a municipality, income from its bonds was exempt from federal income taxation, and that its officers were appointed by the county judge and were subject to removal for misconduct under the Tennessee General Ouster Law.

In the present case, it is clear that Highview shares in these factors only to the extent that it pays no local taxes. Highview has no power of eminent domain. It is extremely doubtful that Georgia con-

---

1. Apparently, the bond issue was approved by the voters of Fulton County. However, the record indicates that Highview cooperates with both Fulton and DeKalb Counties. Generally, in this opinion, we will use the word county to refer to Fulton County. However, we explicitly recognize that Highview also cooperates with DeKalb County.

siders Highview a political subdivision. *Cf. Bradfield v. Hospital Authority,* 226 Ga. 575, 176 S.E.2d 92 (1970); *Richmond County Hospital Authority v. McClain,* 112 Ga.App. 209, 144 S.E.2d 565 (1965).[2] There is no evidence in the record that Highview has the authority to issue bonds. Finally, the structure of the organization of Highview convinces us that Highview is not administered by individuals who are responsible to public officials or to the electorate generally. As mentioned earlier, the corporate directors of Highview are self-perpetuating and are not directly responsible to the public officials of the county.

■■■ B. Although we believe that Highview itself is not a political subdivision, it is possible for a non-exempt institution to share a political subdivision's exemption if the non-exempt employer does not have control over labor relations so that it cannot bargain effectively with a union. *NLRB v. Pope Maintenance Corp.,* 573 F.2d 898 (5 Cir. 1978). In the instant case, we believe that the record sufficiently supports the Board's conclusion that Highview has the ability to bargain meaningfully with its employees. This is especially true in view of the rather small share of the operating cost contributed by the county.[3]

C. Even if jurisdiction is proper under the Act, the Board has traditionally followed the policy of declining to assert jurisdiction if it finds that to do so would not effectuate the purposes of the Act. *Compton v. National Maritime Union of America, AFL–CIO,* 533 F.2d 1270, 1275 (1 Cir. 1976). Given this policy, Highview next argues

that the Board has not properly applied its own standards in asserting jurisdiction in this case.

In *Herbert Harvey, Inc.,* 171 NLRB 238, 68 LRRM 1053, 1055 (1968), the Board stated,

"The Board has . . . uniformly held that the assertion of jurisdiction over a contractor providing services for an institution exempted from the process of the Act is dependent upon the relationship of the services performed to the exempted functions of the institution. Where the services are intimately connected with the exempted operations of the institution, the Board has found that the contractor shares the exemption; on the other hand, where the services are not essential to such operations the Board has found that the contractor is not exempt and asserts jurisdiction over the contractor's activities."

Using this rule the Board has declined to assert jurisdiction over a private company that provided: (1) fire protection to a political subdivision, *Rural Fire Protection Co.,* 216 NLRB 584, 88 LRRM 1305 (1975); (2) police protection to a political subdivision, *The Wackenhut Corp.,* 203 NLRB 86, 83 LRRM 1001 (1973); (3) park maintenance service to a political subdivision, *Current Construction Corp.,* 209 NLRB 584, 85 LRRM 1417 (1974). According to the Board each of these services—fire, police, and park maintenance—is essential to the purposes of the political subdivision.

**2.** The Board suggests that since the nature of the entity is a federal question these state cases are irrelevant to the inquiry. While we agree that the question is one of federal law and these cases are not dispositive of the issue, *NLRB v. Natural Gas Utility District of Hawkins County,* 402 U.S. 600, 91 S.Ct. 1747, 1749, 29 L.Ed.2d 206 (1971); *NLRB v. Natchez Trace Electric Power Ass'n,* 476 F.2d 1042, 1044 n.5 (5 Cir. 1973), they are certainly relevant, *Hawkins County,* 402 U.S. 600, 91 S.Ct. at 1750, 29 L.Ed.2d 206, *Natchez Trace,* 476 F.2d at 1045.

**3.** Of course, we realize that the five percent figure suggested by the Board refers only to actual operating funds expended by the county and this figure takes no account of the value of

the building and services contributed by the county. However, we believe that contributions made by the county are not of such a nature as to fetter Highview in negotiations with employees. Indeed, some evidence before the Board suggested that the Highview administrator granted a new holiday and offered wage benefits in an effort to block moves toward the union. (The Board found this to be a Section 8(a)(1) violation, but for reasons stated later in this opinion, we need not reach this point. We offer this evidence only to show Highview's administrator was capable of granting new holidays and wage increases without interference from the county.)

On the other hand, the Board has asserted jurisdiction over an employer who provided janitorial service to the World Bank, *Herbert Harvey, Inc.*, 171 NLRB 238, 68 LRRM 1053 (1968), *enforced*, 137 U.S.App. D.C. 282, 424 F.2d 770 (1969), and an employer who provided maintenance service to a (then exempt) hospital, *Richmond of New Jersey, Inc.*, 168 NLRB 117, 67 LRRM 1113 (1967). The distinction, according to the Board is that maintenance at the World Bank and at an exempt hospital is not "so integrated and interwoven with the purposes and operation of the [exempt institution]." *Id.* 67 LRRM at 1113, *quoted in Herbert Harvey, Inc.*, 137 U.S.App.D.C. 282, 424 F.2d at 782 n.90. Therefore, the Board will decline to assert jurisdiction over an employer if it supplies an exempt institution with services that are an essential attribute of the purpose of the exempt institution. However, the Board will assert jurisdiction over an employer who merely provides services to the exempt institution that do not directly relate to the purposes of the exempt institution.

In the instant case, the Board has determined that it will assert jurisdiction over Highview because the providing of nursing home care "is not a traditional municipal function" and the care provided at Highview is "not essential to the function of government."[4] The Board can point to at least two other cases in which it has made the same distinction. *Bishop Randall Hospital*, 217 NLRB 1129, 89 LRRM 1249, *enjoined by a district court*, 89 LRRM 2822 (D.C.Wyo.1974), *dis't ct. reversed for lack of jurisdiction*, 523 F.2d 845 (10 Cir. 1975); *Grey Nuns of the Sacred Heart*, 221 NLRB 1215, 91 LRRM 1099 (1975).

Highview, as can be expected, objects to this determination. It argues that the care of the old, the sick, and the indigent has long been a traditional function of govern-

ment. Highview then asserts that we should disagree with the Board determination of the traditional nature of this service and then correctly apply the Board's rule.

We wholeheartedly agree with Highview that the care of the aged, the sick, and the indigent is a traditional function of government. As a matter of history, the Board's finding is incorrect since the breakdown of the ecclesiastical duty and the advent of the Old Poor Law (1601). Certainly, no one moderately aware of our history, our traditions, and our ideals can argue that this care is not a "traditional" function of government. Every school child knows that this government was founded to "promote the general welfare." U.S.Const. Preamble. The Supreme Court recently said in *National League of Cities v. Usery*, 426 U.S. 833, 851, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976):

> . . . fire prevention, police protection, sanitation, *public health*, and parks and recreation . . . are typical of those [services] performed by state and local governments in discharging their dual functions of administering the public law and furnishing public services. Indeed, it is functions such as these which governments are created to provide, services such as these states have traditionally afforded their citizens.

[emphasis supplied]

In our disagreement with the Board's reason for asserting jurisdiction, we must not lose sight of our standard of review. The Board's decision to assert jurisdiction is a matter within its discretion. *NLRB v. WGOK, Inc.*, 384 F.2d 500, 502 (5 Cir. 1967). The Board will not be overruled by this court unless the "Board's action departed substantially from that taken in seemingly like cases." *Herbert Harvey, Inc.*, 424 F.2d at 780. Put another way, the Board cannot "treat similar situations in

---

4. The Board suggests that statistics show that a majority of hospitals in the United States are privately owned and therefore this demonstrates that health care is not a traditional government function. The Board has overlooked, however, that the national policy in health care has traditionally been to appropri- ate funds to both political subdivisions and non-profit institutions. *See, e. g.,* 42 U.S.C. § 291 a. We think that the Board's evidence demonstrates only *how* government provides health care services not *if* government traditionally provides these services.

dissimilar ways." *Id. citing Herbert Harvey, Inc. v. NLRB,* 128 U.S.App.D.C. 162, 385 F.2d 684, 686 (1967).

■ Given this, we do not perceive it to be our duty to reapply the Board's test because of our disagreement with the Board as to the nature of the service provided by Highview. It is enough for the Board to show that it has treated those similarly situated in similar ways. We agree with the Board that it has treated health care providers in similar ways.[5] *Compare Highview, Inc.* 231 NLRB 1251, 96 LRRM 1184 (1977), *with Bishop Randall, supra,* and *Grey Nuns, supra.*

## II.

The Board found that Highview, Inc. violated Section 8(a)(3) and (1) of the Act by discharging employee Mamie Fullens for protected union activities. The Board ordered that. Highview offer reinstatement to Fullens and to make her whole for any loss of earnings suffered as a result of the discharge. We need hardly mention that the Board's factual findings are protected by the substantial evidence test. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ Essentially, Highview argues that Fullens was discharged for excessive tardiness and absences. According to Highview, Fullens was tardy fifteen times and absent twenty days during a forty-four day working period between mid-December 1975 and March 1976. Highview offered Fullens' time cards into evidence to prove its contention. Without specifically determining that he would attach no weight to the time cards, the administrative law judge found the cards "suspect" because the cards contained "erasures substituting numbers of hours" on the margins of the cards. 231 NLRB at 1258 n.10. We have examined the time cards in evidence, and we have concluded that the ALJ was completely unjustified in not giving dispositive weight to the time cards. We agree with the ALJ that

the cards appear to have pencil erasures on the margins but these erasures and the concomitant pencil marks on the cards are obvious attempts to add the total number of hours Fullens worked. The markings made by hand on the cards are in no way an attempt to register the time punched in or the time punched out. Those times are mechanically printed and the time cards in evidence contain no alterations whatsoever of the mechanically printed times. The Board must have a rational basis for discrediting this physical evidence and the Board has none. *Delchamps, Inc. v. NLRB,* 588 F.2d 476 (5 Cir. 1979).

A. Absences—Even though the ALJ "suspect[ed]" the time cards, he found that Fullens had been absent from Highview "several" times. The ALJ went on to find, however, that the absences were not the motivating cause of the discharge. First, the ALJ noted that all of the absences were legitimate and excused and that the Fullens discharge did not follow the established termination procedure. While we agree with Highview that an employer might discharge an employee for even *legitimate* absences, we agree with the Board that the timing and method of the discharge gives rise to the inference of impermissible discharge.

B. Tardiness—Highview insists that Fullens was tardy fifteen times during the time under scrutiny. We have examined the time cards and we give the cards controlling force. Our examination of the time cards leads but to one conclusion—during the time in question Fullens was tardy one time not fifteen times as insisted by Highview.

Before January 1, 1976, Fullens' shift began at 7:00 A.M.; after January 1, Fullens' shift began at 6:45 A.M. According to Highview policy, employees were not considered tardy unless they started work more than seven minutes after their shift began. Accordingly before January 1, 1976, Fullens was tardy any time she punched in after 7:07 A.M.; after January 1, Fullens was tardy every time she punched in after 6:52 A.M.

---

**5.** We reject the distinction offered by Highview, Inc. that these cases are distinguishable because Highview is for indigents and the other health care providers are for the general public.

The time card evidence established that before January 1, 1976, Fullens punched in at the following times: (all A.M.) 6:51; 6:55; 7:04; 6:59; 6:56; 6:56; 6:55; 6:57; 6:51; 7:12; 6:56; 6:53; 6:55; 6:56; 6:56; 6:56; 6:55. These times establish that Fullens was late one time.[6] Highview has simply applied the post-January 1, 1976, starting time to the pre-1976 cards. Therefore it can easily be seen applying the wrong standard Fullens was late fifteen times.

We, of course, understand that Highview could now argue that it reasonably thought that Fullens was tardy fifteen times and discharged her for that reason. We will anticipate this argument and hold that the timing and method of discharge supports the Board's finding that Highview dismissed Fullens for impermissible reasons.

■ We therefore conclude that despite the ALJ's failure to give controlling force to the time cards in evidence, the Board's ultimate conclusion that Fullens was discharged because of union animus is supported by substantial evidence. The back pay award is enforced against Highview, Inc.

### III.

■ The Board found Highview guilty of various Section 8(a)(1) violations.[7] Prior to oral argument in this case, Highview moved that this court declare the Board's determination moot because the Fulton County Commissioners had made moves to dissolve Highview, Inc. and take over operation of the home as a direct county project. The Board suggested that this court enforce the Board's order in toto and that Highview or

the county be allowed to bring up any change in conditions in subsequent compliance and contempt proceedings.

We reject both suggestions. First, we reject Highview's motions to declare this matter moot: We do not perceive ourselves to be the proper forum to take necessary evidence, and it is not absolutely clear that the county has taken over Highview's operation. Likewise, we reject the Board's suggestion that we enforce in toto and allow Highview or the county to bring up changed conditions in compliance and contempt proceedings. We realize that in some circumstances courts have allowed such a procedure, *NLRB v. Lamar Creamery Co.*, 246 F.2d 8, 10 (5 Cir. 1957); *NLRB v. Cordele NFGR Co.*, 172 F.2d 225, 226 (5 Cir. 1949); *NLRB v. West Coast Casket Co.*, 469 F.2d 871, 873 (9 Cir. 1972); *NLRB v. Autotronics, Inc.*, 434 F.2d 651, 652 (8 Cir. 1970); however, the Supreme Court has made it clear that the matter is within our discretion. *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 86 L.Ed. 718 (1942).

We exercise our discretion in favor of a remand for several reasons: First, we undertake this action out of solicitude for the county and for harmonious inter-governmental relations. If the county has ordered Highview's charter revoked and has undertaken the operation of the home as a part of the county government, we feel that the Board might well wish to review its position in this case.[8] Second, we take this action out of fear of our contempt powers. Reasonable people avoid litigating questions of law when the penalty for a mistaken belief is contempt. Whenever possible we will not

---

6. Our interpolation suggests to us that she was late on December 22, 1975 (7:12 A.M.).

7. The Board found that the employer violated the Act by
   (1) threatening to withhold benefits from employees because of their union activities, (2) creating impression of surveillance of employees' union activities, (3) interrogating employees regarding their union activities and sympathies, (4) ordering employee to remove union pin from her clothing, (5) promising wage increase to employees if they abandoned their support of union, (6) grant-

ing additional paid holiday to employees to influence outcome of representation election, and (7) threatening to discharge employees for engaging in union activities.

8. But, on the other hand, if the county's action is meant simply to "strengthen . . . Highview's" position in this litigation, it will not wash as we have held that Highview, in its present operational form is not a political subdivision. No resolution expressing "intent" will serve to make Highview a political subdivision, it must actually become one.

force litigants into this position. *NLRB v. Jacob E. Decker and Sons*, 569 F.2d 357, 366–67 (5 Cir. 1978); *NLRB v. Biscayne Television Corp.*, 289 F.2d 338 (5 Cir. 1961).

We therefore deny enforcement of the Board's order directing that an offer of reinstatement be made to Mamie Fullens. We also deny enforcement to the Board's order made pursuant to its findings of Section 8(a)(1) violations. Those issues on which we deny enforcement are hereby remanded to the Board so it can review the available evidence and make a determination on Highview's mootness motion.[9]

The Board's order requiring that Mamie Fullens be made whole for her impermissible discharge is ENFORCED; enforcement of all other relief ordered by the Board is DENIED pending further action on remand.

---

9. If the Board finds that the case is moot as to the Section 8(a)(1) violations, there is still the question of successor liability as to the reinstatement order. *See generally, NLRB v. Houston Distribution Services, Inc.*, 573 F.2d 260, 266 (5 Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 722, 58 L.Ed.2d —— (1978).