**TRUMAN MEDICAL CENTER, INCORPORATED, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 80–1148.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1980.

Decided Feb. 11, 1981.

Alvin D. Shapiro, Kansas City, Mo., Earl J. Engle, Stinson, Mag & Fizzell, Kansas City, Mo., for petitioner, Truman Medical Center, Inc.

Kenneth B. Hipp, Deputy Asst. Gen. Counsel, Washington, D. C., Christopher W. Katzenbach, Atty., William A. Lubbers, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Acting Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, National Labor Relations Board, Washington, D. C.

Before LAY, Chief Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

HANSON, Senior District Judge.

This case is before the Court on the petition of Truman Medical Center, Inc. (TMC) for review of an order of the National Labor Relations Board, and on the Board's cross-application for enforcement of the same order. The Board found that TMC violated §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and 158(a)(5), by failing to abide by the union security provision of a collective bargaining agreement formerly in effect between TMC and the Service Employees International Union, Local No. 96 (Union). TMC admits that it violated the security provision; it denies, however, any violation of the Act, claiming that it is a political subdivision of the State of Missouri exempt from coverage under § 2(2) of the Act, 29 U.S.C. § 152(2).[1] The Board first

---

* The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. 2(2) provides in pertinent part:

(2) The term "employer" . . . shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof . . . .

rejected TMC's claim of exemption and assumed jurisdiction over it in a representation proceeding brought by the Union in early 1978, concluding that TMC "is neither a political subdivision nor a joint employer with one nor a provider of essential services to one and, since [it] otherwise meets the Board's jurisdictional standards, we find it will effectuate the purposes of the Act to assert jurisdiction herein." 239 NLRB 1067 (1978). This conclusion was reaffirmed in the subsequent unfair labor practices proceeding brought by the Union after TMC violated the security provision in order to gain judicial review of the Board's assumption of jurisdiction. 247 NLRB No. 58 (1980). Finding that it has "'warrant in the record' and a reasonable basis in law," *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944), we affirm the Board's assumption of jurisdiction and enforce its order.

■ 1. The Board has long considered an entity to be a political subdivision of a state within the meaning of § 2(2) only if it is (1) "created directly by the State, so as to constitute a department or administrative arm of the government," or is (2) "administered by individuals who are responsible to public officials or to the general public." *NLRB v. Natural Gas Utility District of Hawkins County, Tennessee*, 402 U.S. 600, 604–05, 91 S.Ct. 1746, 1749, 29 L.Ed.2d 206 (1971) (*Hawkins County*); cf. *Mobile Steamship Assn.*, 8 NLRB 1297 (1938); *Natchez Trace Electric Power Assn.*, 193 NLRB 1098 (1971), enf'd, 476 F.2d 1042 (5th Cir. 1973). TMC satisfies neither of these tests as they have been applied by the Board and the courts.

A. TMC is a not-for-profit corporation organized under the general not-for-profit law of Missouri. *Compare Camden-Clark Memorial Hospital*, 221 NLRB 945 (1975) (hospital not incorporated or organized separately from the city). No special act of the state legislature or any public official was required to create it. *Compare Hawkins County, supra* (utility district organized under a special public law requiring

findings by county judge that organization served the public convenience). It is true that TMC was organized in 1962 at the instance of the City of Kansas City, Missouri, to take over from the Kansas City Department of Health the operation of the Kansas City General Hospital; but this was done for the specific reason that the hospital needed more money than the City could provide, and operation of the hospital as a department of the City precluded the availability of federal funds and private grants. It is also true that TMC has assumed the statutory responsibilities of Kansas City and Jackson County, Missouri, for medical care of indigents; but this has been done pursuant to a series of contracts between City and County and TMC under which TMC operates the City and County hospitals, not pursuant to any statutory duty imposed on TMC itself. Since 1971 TMC has also operated as a teaching hospital under an affiliation agreement with the University of Missouri-Kansas City. TMC's contractual relations with exempt political subdivisions of Missouri do not transform TMC itself into a political subdivision of the State. *E. g., Herbert Harvey, Inc. v. NLRB*, 424 F.2d 770 (D.C.Cir.1969). TMC's operations are not governed by state or local regulations applicable to government agencies. Its employees are not covered by any governmental merit system. It does not require City, County or State approval to borrow money, issue notes, or pledge its property as security for loans. It has no power to tax, no power of eminent domain, or any other sovereign power. There is no evidence in the record that its books and records are "public documents" under Missouri law, although they are subject to inspection by City and County pursuant to contract. *Compare, generally, Hawkins County, supra*. The Board's finding that TMC was not created directly by the State so as to constitute a department or administrative arm of the government is amply supported by the record. It is not significantly undermined by evidence that TMC has been treated as a governmental agency

by certain federal agencies for certain purposes.[2]

B. Nor is TMC administered by individuals who are responsible in the required sense to public officials or to the general public. Its governing body is a self-perpetuating board of directors, the majority of whom—31 out of 49—are neither appointed by nor subject to removal by public officials or the general public and have no official connection to Kansas City, Jackson County or the University of Missouri. *Compare Camden-Clark Memorial Hospital, supra* (all members of the hospital board of trustees subject to confirmation by city council); *Hawkins County, supra* (utility district's commissioners appointed by county judge and subject to removal under the general law applicable to removal of public officials). It is true that the remaining 18 directors are appointed by or associated with the City, County or University. But the directors determine policy by majority vote and the votes of the government directors are no more significant than the votes of the other directors. Decisions by the board are not subject to approval by any governmental body and are not communicated to City, County or University officials other than those on the board itself. The responsibility of the board of directors to City, County and University, while undoubtedly heavy, derives from the contractual relations between TMC and these political subdivisions, and is not the sort of direct personal accountability to public officials or to the general public required to support a claim of exemption under § 2(2). *Cf. NLRB v. Highview, Inc.,* 590 F.2d 174, *modified on other grounds,* 595 F.2d 339 (5th Cir. 1979); *NLRB v. Natchez Trace Electric Power Assn.,* 476 F.2d 1042 (5th Cir. 1973). Finally, while TMC's affiliation agreement with the University gives the University a veto power in the appointment of certain of TMC's top officials, this power has never been exercised, and the University does not possess the power to remove any of the officials once they have been appointed and has never sought to do so. *Cf. NLRB v. E. C. Atkins & Co.,* 331 U.S. 398, 67 S.Ct. 1265, 91 L.Ed. 1563 (1947) (military's right to veto hire of guards not sufficient to remove employer from Board's jurisdiction).

2. TMC's claim that it is a "joint employer" with the City, County and University is no better founded than its claim that it is itself an exempt political subdivision. We look here to TMC's relations with the unit of service and maintenance employees represented by the Union in the present dispute; our inquiry is whether TMC has retained sufficient control over its relations with these workers that it "is able to bargain effectively about the terms and conditions of employment with the employees' representative." *NLRB v. St. Louis Comprehensive Neighborhood Health Center, Inc.,* 633 F.2d 1268 at 1270 (8th Cir. 1980); *Board of Trustees of Memorial Hospital v. NLRB,* 624 F.2d 177, 185 (10th Cir. 1980); *NLRB v. Austin Developmental Center, Inc.,* 606 F.2d 785, 789 (7th Cir. 1979). We have no doubt that TMC has retained sufficient such control. No statutory provision gives City, County or University control over the salaries or other benefits of the employees in question; *compare NLRB v. Chicago Youth Centers,* 616 F.2d 1028 (7th Cir. 1980) *and Lutheran Welfare Services of Ill. v. NLRB,* 607 F.2d 777 (7th Cir. 1979). No provision of the contracts between TMC and the City, County or Uni-

---

2. For example, the IRS has ruled that TMC is not subject to tax on its income because it is an instrumentality of Kansas City, and has approved its pension plan as a "government" plan. However, as the IRS cautioned in its ruling on the status of the pension plan, "This letter relates only to the status of your plan under the Internal Revenue Code. It is not a determination regarding the effect of other Federal or local statutes." Moreover, the IRS has also ruled that the interest TMC pays on notes is not exempt from federal tax under the exemption for interest on the obligations of political subdivisions of states. *Cf. NLRB v. Randolph Electric Membership Corp.,* 343 F.2d 60, 64–65 (4th Cir. 1965):

> These rulings ... point in several directions, and are not helpful to the argument. In any event, these rulings of the Internal Revenue Service are not determinative of the meaning of the section 2(2) exemption for purposes of the National Labor Relations Act.

versity gives any of the latter the right to approve or disapprove TMC's decision as to "staffing, wage rates and fringe benefits; the employment of any person listed [in a list of all employees]; and the total wages paid to all employees in any given classification," nor has TMC agreed "not to enter into any written contract of employment . . . or any collective agreement covering terms and conditions of employment . . . without the express written consent" of City, County or University; *compare Board of Trustees of Memorial Hospital v. NLRB, supra,* 624 F.2d at 185–86. On the contrary, under its contracts with City, County and University TMC has retained virtually complete control over its relations with the employees here in question, and it has since 1973 negotiated two collective bargaining agreements with them with minimal and only informal consultations with City, County and University. The fact that TMC's ability to bargain is constrained by budgetary restraints arising from its contract does not preclude it from bargaining effectively with the Union; these limitations merely serve "to define the economic framework with[in] which [TMC] and the Union may conclude their bargaining." *NLRB v. St. Louis Comprehensive Neighborhood Health Center, Inc., supra,* at 1271; *cf. NLRB v. Austin Developmental Center, Inc., supra,* 606 F.2d at 789 n.8. In short, substantial evidence supports the Board's conclusion that TMC is not a "joint employer" of the workers here in question with any political subdivision of Missouri.

■ 3. Prior to 1979 the Board sometimes declined to exercise its jurisdiction over an otherwise non-exempt employer if it found that there was an "intimate connection" between the basic or traditional functions of an exempt political subdivision and the services provided to that subdivision by the non-exempt employer. *See Rural Fire Protection Co.,* 216 NLRB 584 (1975); *Temple University,* 194 NLRB 1160 (1972). TMC argues that the Board should have declined jurisdiction over it on that basis, citing its provision of health care to indigent residents of Kansas City and Jackson County. However, the Board has consistently taken the view that "the operation of a hospital is not necessarily so basic or traditional a government function as to warrant our declining to assert jurisdiction," *Grey Nuns of the Sacred Heart,* 221 NLRB 1215 (1975); and in any case the Board abandoned the "intimate connection" test in *National Transportation Service, Inc.,* 240 NLRB 64 (1979). We find no abuse of discretion in the Board's assertion of jurisdiction here.

The order of the Board is enforced.