**ST. JUDE INDUSTRIAL PARK BOARD, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 84–1489.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1985.

Decided April 24, 1985.

Gerald Tockman, St. Louis, Mo., for petitioner.

Francis H. O'Connell, NLRB, for respondent.

Before HEANEY, BRIGHT and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

St. Jude Industrial Park Board (Park Board) petitions this Court to review a final decision and order of the National Labor Relations Board (NLRB), and the NLRB cross-petitions for enforcement of its decision and order. The issue on appeal is whether the Park Board is a "political subdivision" of a state under section 2(2) of the National Labor Relations Act (the Act) and thus exempt from the jurisdiction of the

NLRB. For the reasons set forth below, we affirm the decision of the NLRB.

## I.

The City of New Madrid, Missouri, created the St. Jude Industrial Park in 1968. The City entered into an agreement with Noranda Aluminum, Inc. (Noranda), a manufacturing concern, agreeing to raise the initial funds for the land and facilities of the park through an $85 million industrial revenue bond issue backed by Noranda. Noranda agreed to lease the land with the option to purchase it from the City upon the retirement of the bonds for the nominal sum of $10. Noranda also has the option to purchase any additional land at its cost to the City. The City entered into a similar agreement with Associated Electric Cooperative, Inc. Associated Electric backed a $98 million revenue bond issue by the City, and built an electrical power plant in the industrial park. The City also received a $2,929,000 grant for the park from the Economic Development Administration.

No City funds were used to acquire or maintain the industrial park. The funds from the bond issues and Noranda's lease payments are placed into a separate account. Maintenance costs are assessed to Noranda and Associated Electric based on acreage (Noranda pays sixty-eight percent of the maintenance costs; Associated Electric pays thirty-two percent). Water treatment charges are assessed on the basis of use (Noranda pays twenty-one percent of the water treatment costs; Associated Electric pays seventy-nine percent).

Noranda and the City created the St. Jude Industrial Park Board by a declaration on November 2, 1970. The City passed an ordinance ratifying this declaration on January 18, 1971. The Park Board is to manage the park, providing maintenance and improvements to common areas as it

sees fit. The Park Board has six members: three are appointed by the Mayor of New Madrid, and three are appointed by Noranda from its staff. The agreement provides that Noranda selects one of its Park Board members to be the park manager, and another to be assistant park manager.[1]

The City has no power under this agreement to remove Noranda's appointees. According to the record, the Park Board meets infrequently; it has held only two formal meetings since 1972.[2] Consequently, Noranda and its staff control all Park Board decisions regarding budget, purchases, services and billings to tenants, and labor relations.

Noranda controls all decisions regarding hiring, firing, wages, conditions of employment, and assignment and direction of work for the park employees. The park employees are directly supervised by a consultant to the Park Board. The consultant reports directly to the park's assistant manager, who is also Noranda's manager of planning and development. The record further indicates that park employees perform work directly for Noranda at Noranda's facilities.

Noranda pays all wages and benefits for the Park Board employees out of income from the park assessments. Noranda sets the wage rates for park employees; park employees receive higher wages than comparable City employees. The Park Board employees have a health, welfare, and retirement plan which is essentially the same plan provided by the City to its employees.

## II.

The United Steelworkers of America, AFL–CIO (Union), won a representation election for Park Board employees on June 24, 1983.[3] The NLRB's Regional Director

---

1. In fact, a Noranda employee had been serving as park manager since May 18, 1970.

2. The Park Board held its first meeting in November, 1970, before the City had adopted the ordinance approving the Park Board declaration and "authorizing" the Mayor to appoint three of the Park Board members.

3. The Union filed a representation petition with the NLRB on July 26, 1982, seeking to be certified as the collective bargaining representative of the Park Board's production and maintenance employees. The issue in the ensuing hearing before the NLRB was whether the NLRB had jurisdiction over the Park Board

certified the Union as the employees' exclusive bargaining representative on July 12, 1983. On July 21, 1983, the Union filed unfair labor practice charges against the Park Board alleging that the Park Board had refused to bargain with the Union, in violation of section 8(a)(5) and (1) of the Act. 29 U.S.C. §§ 158(a)(5) and (1). The Park Board admitted in its answer that it had refused to bargain with the Union. It denied, however, that it was an employer engaged in commerce subject to the NLRB's jurisdiction. It pled that it is an agency and instrumentality of the City of New Madrid, and therefore a political subdivision exempt from the Act.

The NLRB issued a decision and order on March 28, 1984, finding the Park Board to be subject to the NLRB's jurisdiction. It concluded that the Park Board had unlawfully refused to bargain with the Union. It ordered the Park Board to cease and desist from this refusal, to bargain on request with the Union, and, if an understanding is reached, to embody the understanding in a signed agreement.

The Park Board then filed a petition for review of the NLRB decision and order in this Court. The NLRB cross-applied for enforcement of its order.

### III.

Section 2(2) of the Act provides:

(2) *The term "employer"* includes any person acting as an agent of an employer, directly or indirectly, but *shall not include* the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or *any State or political subdivision thereof,* or any person subject to the Railway Labor Act [45 U.S.C. § 151 et seq.], as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 152(2) (1978) (emphasis added). Although the term "political subdivision" is not defined in the Act, the Supreme Court

has approved the NLRB's interpretation of the political subdivision exemption as limited to entities "that are either: (1) created by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *NLRB v. Natural Gas Utility District of Hawkins County,* 402 U.S. 600, 604–05, 91 S.Ct. 1746, 1749–50, 29 L.Ed.2d 206 (1971); *Truman Medical Center, Inc. v. NLRB,* 641 F.2d 570, 572 (8th Cir.1981); *NLRB v. St. Louis Comprehensive Neighborhood Health Center, Inc.,* 633 F.2d 1268, 1270 n. 3 (8th Cir.1980), *cert. denied,* 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981).

We find that the NLRB properly determined that the Park Board is not a political subdivision under either definition. First, although the City ratified the creation of the Park Board by adopting an ordinance, the City did not create the Park Board "to constitute [a] department[ ] or administrative arm[ ] of the government." The City first entered into a business deal with Noranda whereby Noranda has the option to purchase the land from the City for $10 upon the retirement of the revenue bonds, and Noranda is essentially making the payments on the land presently through its lease payments. Rather than make the Park Board an arm of the City, the City has retained very little control over Park Board affairs, and has essentially turned over the operation of the park to Noranda.

Noranda's control of the Park Board also indicates that the Park Board does not meet the second test for the political subdivision exemption, because the Park Board is not "administered by individuals who are responsible to public officials or to the general electorate." Noranda appoints three of the six Park Board members from its staff, and these members may not be re-

under the Act. The NLRB issued its decision on December 2, 1982, adopting the decision of the administrative law judge that the Park Board

was not an exempt political subdivision. *St. Jude Industrial Park Board,* 265 NLRB 597 (1982).

moved by the City. The park manager and assistant manager work for Noranda. The Park Board itself has rarely held a formal meeting. Under these circumstances, we cannot conclude that the Park Board is sufficiently responsible to public officials or the general electorate to be considered a political subdivision for purposes of determining whether the NLRB may assert jurisdiction over it as an employer.

■ The Park Board also argues that the NLRB abused its discretion in asserting jurisdiction over it because the Park Board lacks sufficient control over its labor relations to engage in meaningful collective bargaining. It argues that control over Park Board employment rests with the City. The record in this case clearly supports the NLRB's conclusion that the City did not exercise significant control over Park Board labor relations. Park Board employees receive higher wages than City employees, and the terms of employment and work supervision are effectively controlled by Noranda Park Board members.

The order and decision of the NLRB is therefore affirmed.