533 F.2d 1270
 91 L.R.R.M. (BNA) 3048, 78 Lab.Cas. P 11,352
 Raymond J. COMPTON, Regional Director, Petitioner-Appellant,
v.
NATIONAL MARITIME UNION OF AMERICA, AFL-CIO, Respondent-Appellee,
and
Seafarers International Union, Atlantic, Gulf, Lakes and
Inland Waters District, Intervenor-Appellant,
and
Puerto Rico Marine Management, Inc., Intervenor-Appellant.
Raymond J. COMPTON, Regional Director, Petitioner-Appellee,
v.
NATIONAL MARITIME UNION OF AMERICA, AFL-CIO, Respondent-Appellant.
 Nos. 75-1449, 75-1450, 75-1490 and 75-1489.
 United States Court of Appeals,
First Circuit.
 Argued Feb. 3, 1976.
Decided April 2, 1976.
 
 Stanley B. Gruber, New York City, with whom Abraham E. Freedman, New York City, and Malone, McCarthy & Boluck, New York City, were on briefs, for National Maritime Union of America, AFL-CIO.
 Joseph E. Mayer, Asst. Gen. Counsel, Washington, D. C., with whom John S. Irving, Jr., Gen. Counsel, Gerald Brissman, Associate Gen. Counsel, Washington, D. C., and Wilma Liebman, were on brief, for Raymond J. Compton.
 Benjamin Schlesinger, New York City, with whom Schulman, Abarbanel & Schlesinger, New York City, were on briefs, for Seafarers Intern. Union of North America, Atlantic Gulf Lakes and Inland Waters District, AFL-CIO.
 Fred F. Fielding, with whom Kenneth F. Hickey, Thomas K. Wotring, and Morgan, Lewis & Bockius, Washington, D. C., were on briefs, for Puerto Rico Marine Management, Inc.
 Before COFFIN, Chief Judge, MATTHES* and McENTEE, Circuit Judges.
 COFFIN, Chief Judge.
 
 
 1
 These cases are consolidated appeals from a district court order issuing a temporary injunction in a proceeding under § 10(l ) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(l ) (1970). In one appeal, the National Maritime Union (NMU), respondent below, challenges that portion of the district court order finding reasonable cause to believe that NMU was engaging in conduct cognizable under the Act as a violation of §§ 8(b)(4)(B) & (D), 8(b) (7)(A), 29 U.S.C. §§ 158(b)(4)(B) & (D), 158(b)(7)(A) (1970), and enjoining such conduct pending the National Labor Relations Board's (Board's) final determination of the unfair labor practice charges. In the second case, the petitioner below, the Regional Director of Region 24 of the Board, joined by intervenors Seafarers International Union (SIU) and Puerto Rico Marine Management, Inc. (PRMMI), the charging party, appeals from that portion of the district court's order which directs PRMMI to man four roll-on, roll-off (RORO) vessels with certain specified NMU unlicensed seamen pending disposition of the unfair labor practice charges.
 
 
 2
 The underlying facts of these appeals concern a labor dispute over the proper representation of employees of PRMMI, a private corporation which serves as the managing agent for the Puerto Rico Maritime Shipping Authority (PRMSA) a governmental corporation of the Commonwealth of Puerto Rico. PRMSA owns two types of ships: eight lift-off, lift-on vessels, and four roll-on, roll-off (RORO) vessels. Until October 1, 1975, the four RORO vessels were managed by Marine Transportation Management, Inc. (MTM) which had a collective bargaining contract with NMU for its unlicensed seamen. On October 1, 1975, PRMSA consolidated all management of its vessels in PRMMI. PRMMI has a fleet-wide collective bargaining contract with SIU for all its unlicensed seamen.
 
 
 3
 Prior to the transfer, PRMMI instituted a declaratory judgment action in federal district court for the purpose of adjudicating whether NMU should continue to represent the unlicensed seamen on the RORO vessels, or whether SIU should take over this responsibility pursuant to the pre-existing fleet-wide contract. On October 2, 1975, however, PRMMI withdrew its action, informed NMU that it was recognizing SIU as the appropriate representational entity, and further informed NMU that upon the RORO vessels reaching Puerto Rico, the NMU seamen would be discharged, and replaced by SIU seamen. NMU reacted by instituting a boycott of PRMMI, their picket lines inducing several employees of other employers to refuse to handle cargo on or to PRMMI ships. Several PRMMI vessels carrying over 2000 container loads of cargo were unable to unload at the PRMMI facility of Puerto Rico alone. PRMMI complained to the Regional Director of the NLRB, who, approximately one week after the institution of the picket lines, filed an unfair labor practice complaint against NMU charging violations of § 8(b)(4)(i)(ii)(B) & (D), and § 8(b)(7)(A) of the Act. The Regional Director further sought injunctive relief against the secondary picketing of PRMMI in the district court pursuant to § 10(l ) of the Act, 29 U.S.C. § 160(l ).
 
 
 4
 NMU defended against the Board action for injunctive relief, alleging that the agency had no jurisdiction over the dispute because PRMMI was a government entity within the meaning of § 2(2) of the Act. The district court, however, found that the Regional Director had reasonable cause to believe that the Board had jurisdiction under the Act, and that the charged violations of the Act had occurred. It found injunctive relief appropriate, and issued an order enjoining NMU from picketing PRMMI in violation of the Act. The court, however, was mindful that upon a full review of the jurisdictional issue, the Board may conclude that it lacks jurisdiction and therefore would be powerless to rectify any unlawful conduct of PRMMI in firing the NMU seamen. Accordingly, the district court ordered PRMMI to rehire those seamen who manned the RORO vessels on September 30, the day before the consolidation of operations. Upon application of the Regional Director, this court granted a stay of the latter portion of the district court's order pending appeal.
 
 
 5
 These appeals raise two distinct issues. The NMU appeal challenges the district court's finding of "reasonable cause" to believe that the union violated certain sections of the Act. The union contends that PRMMI shares PRMSA's exemption from coverage of the Act under § 2(2), 29 U.S.C. § 152(2), as a political subdivision. If the district court was in error in finding reasonable cause, it would have had no jurisdiction to enter any manner of injunction in this case.[1] Therefore, as the NMU appeal challenges both the Board's jurisdiction, and the district court's jurisdiction to enter the contested order, we will deal with that appeal first. The Regional Director's appeal concerns the power of the district court to enter an equitable decree in a § 10(l ) proceeding which is not designed solely to effectuate the purposes of the Act. It will be considered second.
 
 
 6
 If, upon investigation of §§ 8(b)(4) and 8(b)(7) charges, a regional director of Board finds that there is reasonable cause to believe such charges are true, he is directed by § 10(l ) of the Act to petition the district court for appropriate injunctive relief pending Board disposition of the unfair labor practice charges. In granting an injunction under § 10(l ), the district court must first find that the Regional Director could have " 'reasonable cause to believe' that the charges filed were true". McLeod v. National Maritime Union, 457 F.2d 490, 493 (2d Cir. 1972). In the present case, the district court made extensive findings of fact. It found that NMU had a dispute with PRMMI and PRSMA concerning the employment of the unlicensed NMU seamen on the four RORO vessels which had been transferred. It further found that NMU had established a picket line at PRMMI's premises. As a result of this picketing, longshoremen represented by another labor organization refused to cross picket lines, and trucks of two independent trucking firms were prevented from picking up or delivering cargo. The union maintained its picket lines at all PRMMI facilities without regard to whether the facility was used only for lift-on, lift-off vessels, which were not in controversy, or used for the disputed RORO vessels. Finally, the district court found that the acts of NMU induced and encouraged individuals employed by PRMMI and other persons engaged in commerce to refuse "in the course of their employment to transport, or otherwise handle cargo" with the object of forcing "PRMMI to assign the work of unlicensed personnel on the roll-on, roll-off ships to employees who are members of and represented by" NMU. As a conclusion of law, the district court found that NMU had engaged in unfair labor practices within the meaning of §§ 8(b)(4)(B) & (D) and 8(b)(7)(A).
 
 
 7
 The union does not seriously contest the district court's findings of fact concerning the actions constituting the unfair labor practice charges. Rather, NMU's sole contention on appeal is that PRMMI is not an employer within the meaning of the Act. The argument is that since PRMMI is not an employer, the acts of NMU did not have the object of "forcing or requiring any employer to assign particular work to employees in a particular labor organization . . .." as is required by § 8(b)(4)(D). As the other unfair labor practice charges are unsupported by specific findings of ultimate fact in the district court's written memorandum, see Fed.R.Civ.P. 52(a), the union contends that only the § 8(b)(4)(D) charge can sustain the injunction imposed below.[2] The question on appeal, therefore is whether there is reasonable cause to believe that PRMMI does not share PRMSA's exemption under § 2(2) of the Act, and is otherwise an employer.
 
 
 8
 It is conceded by all parties that PRMSA is a "political subdivision" exempt from the Act. Under Board precedent, a private contractor which performs services for an exempt governmental agency, may or may not be deemed to share the exemption. Compare Transit Systems, Inc., 221 N.L.R.B. No. 53 (1975); ARA Services, Inc., 221 N.L.R.B. No. 16 (1975); Rural Fire Protection Co., 216 N.L.R.B. No. 95 (1975) with BDM Services Co., 218 N.L.R.B. No. 180 (1975); W. F. Lane & Associates, 218 N.L.R.B. No. 74 (1974). There are two tests utilized by the Board in determining whether to assert jurisdiction in such a case.
 
 
 9
 The first test, denominated the "statutory" test by the Regional Director, is whether the nominal private employer has enough control over the subjects of concern to labor relations so that it could bargain effectively with a union. If the private employer does not retain sufficient control over hiring, firing, wages and working conditions, the exempt governmental agency must be deemed to be the actual employer for labor relations purposes, and the Board will not assert jurisdiction. ARA Services, Inc., supra; see Herbert Harvey, Inc. v. NLRB, 137 U.S.App.D.C. 282, 424 F.2d 770 (1969). In the case at bar, the evidence presented to the district court establishes that the management contract between PRMSA and PRMMI grants to PRMMI control over the subjects of concern to labor relations. PRMMI's department heads have the authority to fire employees; employees are hired pursuant to a call by PRMMI to the SIU hiring hall; and PRMMI, either alone or as a member of a multi-employer group, has negotiated contracts with numerous labor unions. PRMSA does retain some measure of control over PRMMI's operations through its approval of the yearly budget, has participated in some labor negotiations, and has signed, as a guarantor, labor contracts, see Puerto Rico Marine Management, Inc. v. International Longshoremen's Ass'n, 398 F.Supp. 118, 123 (D.Puerto Rico, 1975). On balance, we hold that the district court was entitled to find that there was reasonable cause to believe that the Board would find PRMMI to be an employer under this test.
 
 
 10
 The second test employed by the Board concerns its discretionary power to decline jurisdiction over an employer when, in its opinion, the purposes of the Act would not be effectuated by taking jurisdiction. Transit Systems, Inc., supra; Rural Fire Protection Co., supra. It is, of course, for the Board to determine whether to decline jurisdiction on such grounds. Cf. NLRB v. WGOK, 384 F.2d 500, 502 (5th Cir. 1967). The task of the district court is merely to determine whether there is reasonable cause to believe that the Board will take jurisdiction.[3] This test has been traditionally articulated as whether the private employer serves a function which is " intimately connected" with the exempt institution. The Wackenhut Corp., 203 N.L.R.B. No. 3 (1973). It is undisputed, here, that PRMMI's function, managing the operations of the commercial vessels owned by PRMSA, is intimately connected with the purpose of PRMSA: to provide ocean common carrier service between Puerto Rico and the exterior. The "intimately connected" test, however, has also been described as the Board's attempt to strike a balance between the purposes of the Act and the immunities enjoyed by the exempt institution. Herbert Harvey, Inc. v. NLRB, supra at 779-80. Accordingly, the Board has exerted jurisdiction in situations, like the one at bar, in which the functions of the private employer are primarily commercial in nature even though they are intimately related to the purposes of the exempt governmental agency. Bishop Randall Hosp., 217 N.L.R.B. No. 185 (1975); Culinary Alliance, 175 N.L.R.B. 161 (1969).
 
 
 11
 PRMMI operates twelve common carrier vessels in interstate commerce. As a result of NMU's picketing, most of the vessels were tied up in ports unable to transfer over 2000 loaded containers of various commodities including perishables. Because PRMMI's operations are directly in interstate commerce, and because of the significant threat that union activity against PRMMI holds for the free flow of goods in commerce, it is highly unlikely that the Board will decline to assert jurisdiction over PRMMI. Therefore, we hold that the district court did not err in finding reasonable cause to believe PRMMI to be an employer within the meaning of the Act, and reasonable cause to believe that NMU violated § 8(b)(4)(D) of the Act.
 
 
 12
 We turn now to the Regional Director's appeal from that portion of the district court's order which requires PRMMI to employ those seamen to man the four RORO vessels who were thus employed on September 30, 1975.[4] The normal scope of review of the issuance of a temporary injunction is whether the district court abused its discretion in framing the order. Boire v. International Brotherhood of Teamsters, 479 F.2d 778, 793 (5th Cir. 1973). However, § 10(l ) of the Act is a statutory exception to the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., see Building & Construction Trades Council v. Albert, 302 F.2d 594 (1st Cir. 1962), which denied jurisdiction to federal courts to issue injunctions in matters arising from labor disputes.[5] Therefore, the discretion of the district court must be limited by the narrow jurisdiction conferred by § 10(l ). As a jurisdictional question, our scope of review is that involved in any legal question: whether the district court's interpretation of the law was correct.
 
 
 13
 The purpose of the § 10(l ) injunction is to preserve the status quo in order that the ultimate decision of the Board would not be negated or rendered moot by intervening events. Humphrey v. Local 639, Teamsters, 369 F.Supp. 730, 735 (D.Md.1974); see Minnesota Mining and Mfg. Co. v. Meter,385 F.2d 265 (8th Cir. 1967) (§ 10(j) proceeding citing legislative history); Angle v. Sacks, 382 F.2d 655 (10th Cir. 1967) (§ 10(j) proceeding). The purposes have been further enumerated to prevent disruptions in the flow of commerce, Henderson v. Engineers, Local 701, 420 F.2d 802 (9th Cir. 1969), and to prevent unfair labor practices, McLeod v. National Maritime Union, 457 F.2d 490, 496 (2d Cir. 1972). One court has stated that relief which is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act are inappropriate in § 10(l ) proceedings. Potter v. Houston Gulf Coast Bldg. Trades Council, 363 F.Supp. 1, 7 (S.D.Tex.1972).[6]
 
 
 14
 The district court here ordered the reinstatement of the NMU members to their positions because the Board might ultimately be found to lack jurisdiction over the controversy. This order can in no way be considered as necessary to protect the efficacy of the Board's ultimate disposition of the jurisdictional issues between NMU and SIU. The order does not work to prevent disruptions to commerce because the picketing activity is otherwise enjoined. Finally, the entire theory upon which the relief is ordered is irrelevant to the only proper concern of the court in this small area of permissible labor injunction activity, the prevention of unfair labor practices within the meaning of § 8 of the Act. By definition, were there to appear no Board jurisdiction, acts could not be considered unfair labor practices.[7]
 
 
 15
 We recognize that, in the ordinary case, the district court would be considered to be acting well within its traditional area of discretion. The Puerto Rico legislature had enacted Act No. 62 which, inter alia, required PRMSA to honor existing collective bargaining agreements governing ships it acquired. PRMMI had been adjudged not an employer under § 2(2) of the Act in Puerto Rico Marine Management, Inc. v. ILA, supra. It made considerable sense to try to protect the jobs of the NMU seamen who found their existing contract suddenly and unilaterally declared inoperative, with no certainty that the Board could, if it found them entitled to reinstatement, devise any effective remedy. But the ordinary scope of discretion noted in Boire, supra, cited by NMU, does not seem to us to support the kind of relief given here. Indeed, the implication of upholding such broader relief would be that in any case involving a governmental unit, where an argument could be made that it is not an "employer" under the Act, courts would be free to coerce management hiring decisions something they cannot do in the case of all other employers, pending Board resolution of the merits of a dispute.
 
 
 16
 Given the objectives of the Norris-LaGuardia Act, the limited exception to its anti-injunction policies carved out by § 10(l ), the limited precedent available which supports the Board, and the Board's claim that the policies of the Act would be undermined by the injunction as now entered, we conclude with some reluctance that that part of the court's order requiring the retention of NMU seamen on the RORO vessels must be reversed. We express the hope that the substantive proceedings before the Board go forward as expeditiously as possible.
 
 
 17
 The order of the District Court is affirmed in part and reversed in part.
 
 
 
 *
 Of the Eighth Circuit, sitting by designation
 
 
 [1]
 Section 10(l ), 29 U.S.C. § 160(l ), is a statutory exemption to the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq. The parties have pointed to no other source of the district court's power in this matter
 
 
 [2]
 In its conclusions of law, the district court found reasonable cause to believe that the union violated § 8(b)(4)(B) and § 8(b)(7)(A) as well as § 8(b) (4)(D). The written findings of fact, however, do not include a finding that an object of the union was to "forc(e) or requir(e) . . . (an) employer to recognize or bargain with a labor organization", as proscribed by § 8(b)(7)(A) and by one clause of § 8(b)(4)(B). This finding could probably be inferred from the express findings, and the absence of express findings does not require reversal if the record supports the requisite reasonable cause to believe the unfair labor practice has occurred. See Cuneo v. Local 825, Int'l Union of Operating Eng., 300 F.2d 832, 833 n. 3 (2d Cir. 1962). But since § 8(b)(7)(A) and the cited clause of § 8(b)(4)(B) require that PRMMI be an employer within the meaning of the Act, in order for NMU's conduct to be a violation, these labor practice charges raise the same issue as the § 8(b)(4)(D) charge
 It is a different case for the charges under the remaining clauses of § 8(b) (4)(B). These clauses make it unlawful to "induce or encourage any individual employed by any person . . . to engage in . . . a refusal in the course of his employment . . . to threaten, coerce . . . any person engaged in commerce . . . where in either case an object thereof is . . . forcing or requiring any person to cease . . . transporting . . . the products of any other producer . . . or to cease doing business with any other person." To constitute a violation of these clauses, PRMMI need not be an employer. See NLRB v. Local 254, Building Service Employees Union, 376 F.2d 131, 135 (1st Cir. 1967). The Regional Director and PRMMI contend that the record supports a finding that one of the objects of the NMU picketing was to force PRMMI to cease doing business with PRMSA by refusing to operate the four RORO ships that had been transferred to PRMMI's management.
 The district court made no such finding. While affirming on the theory that § 8(b)(4)(B) had been violated in such a manner would obviate the issue of whether PRMMI is an employer, we are reluctant to make such an inference from the record before us. In light of our disposition of the reasonableness of the § 8(b)(4)(D) charge, we need not decide whether the injunction was proper if PRMMI were merely a "person engaged in commerce" and not an "employer" under the Act.
 
 
 [3]
 For this reason, the determination of the Puerto Rico District Court in Puerto Rico Marine Management, Inc. v. Int'l Longshoremen's Ass'n, 398 F.Supp. 118 (D.P.R.1975) is not dispositive on the issue of PRMMI's status as an employer under the Act, by reason of the doctrine of stare decisis
 
 
 [4]
 There is, at the outset, a technical problem with this portion of the district court's order. The district court ordered PRMMI to man the RORO ships with the unlicensed seamen who were previously employed by MTM. Under the provisions of § 10(l ), PRMMI, although a party to the Board proceedings under § 10(k) of the Act, is not a party to the district court proceedings for an injunction. See Sears, Roebuck & Co. v. Carpet Layers Local 419, 410 F.2d 1148 (10th Cir. 1969), vacated as moot, 397 U.S. 655, 90 S.Ct. 1299, 25 L.Ed.2d 637 (1970). Appellants PRMMI and SIU were permitted to intervene in the action in district court. As intervenors, they are technically parties to this suit, Fed.R.Civ.P. 24, and are bound by the court's injunctive order against them. Fed.R.Civ.P. 65(d). It is questionable, however, whether intervention was proper in this case. Section 10(l ) states that "any person involved in the charge . . . including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony." In view of the rejection by Congress of private injunction suits, H.Rep. No. 510, June 3, 1947, U.S.Code Congressional Serv., 80th Cong., 1st Sess. 1135, 1164; see Building & Const. Trade Council v. Alpert, supra, and its grant of authority to the Board to pursue injunctive relief, leave to private parties to intervene in a § 10(l ) proceeding may be inappropriate. Cf. NLRB v. Swift & Co., 130 F.Supp. 214, 216-17 (E.D.Mo.1955). Although we note this difficulty, we do not place major reliance on it
 
 
 [5]
 Section 10(l ) provides that, upon the Board filing a petition for appropriate injunctive relief, "the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law . . .." 29 U.S.C. § 160(l )
 
 
 [6]
 Relief other than the injunction of the alleged acts which constitute the unfair labor practice has been ordered in both §§ 10(j) annd 10(l ) proceedings. For example, in Angle v. Sacks, supra, the defendant employer was ordered to reinstate workers he had fired for union activity. The court expressly found that the order of reinstatement was necessary to protect the efficacy of the ultimate Board decision. See also Potter, supra
 
 
 [7]
 Further, granting coercive relief on the theory that the Board may lack jurisdiction over the underlying dispute may be inconsistent with the district court's jurisdiction in a § 10(l ) proceeding. A predicate to injunctive relief in such a proceeding is that the district court find there is reasonable cause to believe that the Act has been violated. To let a court give relief on the assumption that the Board is wrong on reasonable cause, while issuing an injunction because it feels there is reasonable cause is internally inconsistent