## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## AUSTIN DEVELOPMENTAL CENTER, INC., Respondent.

### No. 78–2130.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1979.

Decided Oct. 12, 1979.

---

Christopher Katzenbach, N.L.R.B., Washington, D. C., for petitioner.

John W. Powers, Chicago, Ill., for respondent.

Before CASTLE, Senior Circuit Judge, and SPRECHER and BAUER, Circuit Judges.

SPRECHER, Circuit Judge.

This is an application by the National Labor Relations Board (Board) for enforcement of its order entered against the Austin Developmental Center, Inc. (ADC). The Board found that ADC violated sections 8(a)(1), 8(a)(3), and 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(1), (a)(3), (a)(5), by engaging in various unfair labor practices.[1] ADC does not contest the Board's findings as to the unfair labor practices; instead, ADC urges this court to deny enforcement of the order because the Board lacked jurisdiction in this case.

ADC's jurisdictional challenge presents the following issues for resolution by this court: (1) whether the exclusion of "political subdivisions" from the definition of "employer" in section 2(2) of the Act, 29 U.S.C. § 152(2) applies to ADC, thereby depriving the Board of statutory jurisdiction; and (2) if section 2(2) does not deprive it of jurisdiction, whether the Board abused its discretion by not declining to assert its statutory jurisdiction because of ADC's relationship to agencies of state and local government. We find that the Board has statutory jurisdiction over ADC and did not abuse its discretion in choosing to exercise it. Accordingly, we grant the Board's petition for enforcement of its order.

I

ADC is an Illinois nonprofit corporation engaged in providing educational and counseling services to school age children. ADC's students are children designated by the Chicago Board of Education as socially maladjusted and incapable of functioning within the normal public school classroom. ADC attempts to educate these children so they can return to the public schools. This is accomplished through an unstructured program which allows ADC to deal with the children on a highly individualized basis.[2] The children are served breakfast and lunch at the Center and return home at the end of the school day. ADC also provides counseling services for the children and for members of their families. ADC provides no counseling services for adults unrelated to its pupils; unrelated adults who come to the Center seeking aid are referred to a local hospital for counseling (Tr.Rep. 22).[3]

The Center has been in existence since 1969. From 1969 to 1974, it was operated by the Illinois Department of Mental Health; in 1974, it assumed its present form as a private nonprofit corporation. ADC is governed by a Board of Trustees with day-to-day control vested in an Executive Director. Neither the Department of Mental Health nor the Chicago Board of

1. The Board's opinion in the representation case is found at 226 N.L.R.B. 134 (1976) and its opinion in the unfair labor practice case is found at 236 N.L.R.B. No. 83 (1978).

2. ADC's students are placed in classes of eight, with one teacher and one teacher's aide per class.

3. "(Tr.Rep.)" refers to the official record of the proceedings in the representation case.

Education has any role in the selection of ADC's trustees or other management personnel. These agencies are, however, the primary sources of ADC's funding. Of the 1975 total budget of $309,676, Department of Mental Health grants accounted for $236,837, in-kind contributions provided another $56,954, and Board of Education tuition reimbursements amounted to $11,698.[4]

In 1975, Union organizing activities began which led ultimately to the unfair labor practices which are the subject of the Board's order in this case.[5] In August, 1975, the Union filed its petition to commence the representation case. In that case, ADC argued that the Board lacked jurisdiction and convinced the Regional Director to dismiss the proceeding on that basis.[6] On review by the Board, that decision was reversed and jurisdiction asserted. In the subsequent unfair labor practice proceeding, ADC attempted to relitigate the jurisdictional issue. The Administrative Law Judge refused ADC's offer to prove, through state regulations and other documents, that it had an "intimate connection" with the State of Illinois, finding that the Board's earlier ruling on jurisdiction precluded further argument on that issue. The Board affirmed this ruling, noting that all of the evidence offered by ADC had been available at the time of the representation case and that ADC offered no explanation for its failure to present the evidence at that time. 236 N.L.R.B. No. 83 at n. 2.

The Board went on to adopt the Administrative Law Judge's opinion with minor modification.

## II

▮ At the outset, we must determine whether the Board properly precluded ADC from presenting further evidence relevant to the jurisdictional issue. It is well settled that issues which were or could have been litigated in an earlier Board proceeding may not be relitigated in an unfair labor practice case absent compelling circumstances. *Pittsburgh Plate Glass Co. v. N.L.R.B.*, 313 U.S. 146, 159–62, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); *Baker Canning Co. v. N.L.R.B.*, 505 F.2d 574, 578 (7th Cir. 1974); *N.L.R.B. v. Children's Baptist Home*, 576 F.2d 256, 259, 261 (9th Cir. 1978). The discovery of new evidence is a compelling circumstance justifying relitigation. *Children's Baptist Home, supra*, 576 F.2d at 259. The proffer of evidence not presented earlier, however, will not justify relitigation where it is not shown that the evidence was unavailable at the time of the prior proceeding. *N.L.R.B. v. Tri-City Linen Supply*, 579 F.2d 51, 55 (9th Cir. 1978).

▮ The state regulations and other documents offered by ADC at the unfair labor practice proceeding were not shown to have been unavailable at the time of the representation proceeding; in fact, the Board found that ADC conceded that it had been "aware" of them at that time. 236 N.L.

---

**4.** The Board of Education is required by statute to pay the tuition costs for students attending non-public special education facilities where the reason for their attendance is the inability of the Board's own special education programs to provide the needed services. Ill.Rev.Stat. ch. 122, § 14–7.02.

**5.** ADC does not argue that the Board's findings with respect to the unfair labor practices are erroneous. This opinion, therefore, will not describe the facts underlying the Board's findings. A detailed account of the events resulting in the unfair labor practice charges can be found in the decision of the Administrative Law Judge appended to the Board's order in this case. 236 N.L.R.B. No. 83 (1978).

**6.** ADC's jurisdictional argument in the representation case was directed at proving that ADC was not a health care institution within

the coverage of the 1974 Health Care Amendment to the Act, which had extended the Board's jurisdiction to include profit and non-profit health care institutions. ADC relied upon the Board's decision in *Ming Quong Children's Center*, 210 N.L.R.B. 899 (1974), in which the Board declined to exercise jurisdiction over nonprofit, non-health care institutions. Shortly after the Regional Director's decision, the Board rejected the *Ming Quong* distinction between profit and nonprofit institutions in *The Rhode Island Catholic Orphan Asylum, a/k/a St. Aloysius Home*, 224 N.L.R.B. 1344 (1976). This change in position resulted in the Board's reversal of the Regional Director's jurisdictional ruling in the ADC representation case. See *Austin Developmental Center, Inc.*, 226 N.L.R.B. 134, 134–35 (1976).

R.B. No. 83 at n. 2. In light of this, the Board properly refused to reopen the issue of its jurisdiction. This court, therefore, will focus its attention on the record of the representation proceeding.

## III

ADC asserts that section 2(2), 29 U.S.C. § 152(2), which excludes "political subdivisions" from the coverage of the Act, deprives the Board of jurisdiction in this case.[7] ADC does not argue that it is itself a political subdivision of the state; rather, ADC argues that its close and intimate relationship with the state brings it within the scope of section 2(2). This argument confuses the distinction between statutory and discretionary limitations on the Board's jurisdiction.

The statutory limitation contained in section 2(2) has not been broadly construed. The Board defines "political subdivision" as (1) an entity created by the state so as to constitute an arm of government, or (2) an entity administered by persons who are responsible to the electorate or to public officials. *N.L.R.B. v. Highview, Inc.,* 590 F.2d 174, 176 (5th Cir.), *modified on other grounds,* 595 F.2d 339 (5th Cir. 1979); *Compton v. National Maritime Union of America, AFL–CIO,* 533 F.2d 1270, 1274 (1st Cir. 1976). The Supreme Court has acknowledged this two-part test but has indicated that it does not necessarily define the boundaries of the political subdivision exclusion. The Supreme Court will look at an entity's other attributes as well, such as a broad power of subpoena or eminent domain, in determining whether it is a political subdivision. *N.L.R.B. v. Natural Gas*

*Utility District of Hawkins County,* 402 U.S. 600, 604–07, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971). See also *N.L.R.B. v. Natchez Trace Electric Power Association,* 476 F.2d 1042, 1044–45 (5th Cir. 1975).

Some courts have extended the statutory limitation somewhat further. Where a private employer, because of a contract with an exempt entity, retains so little control over its own labor relations that it cannot engage in meaningful collective bargaining, section 2(2) has been held to deprive the Board of jurisdiction because the exempt entity is deemed the true employer. *Highview, Inc., supra,* 590 F.2d at 177; *N.L.R.B. v. Pope Maintenance Corp.,* 573 F.2d 898, 902 (5th Cir. 1978); *Compton, supra,* 533 F.2d at 1275. The Board has conceded that it lacks jurisdiction in such cases. *ARA Services, Inc.,* 221 N.L.R.B. 64, 65 (1975); *Chicago Youth Centers,* 221 N.L.R.B. 1146, 1147 (1975).

The Board found that section 2(2) did not apply to exclude ADC from the coverage of the Act. The Board's rulings on its own statutory jurisdiction are entitled to great weight. *N.L.R.B. v. E. C. Atkins & Co.,* 331 U.S. 398, 403–04, 414, 67 S.Ct. 1265, 91 L.Ed. 1563 (1947); *Pope Maintenance, supra,* 573 F.2d at 902. ADC presented no evidence satisfying the Board's two-part definition of "political subdivision," nor has it suggested the existence of any of the additional attributes considered relevant by the Supreme Court. Similarly, it has not shown that it lacks effective control over its own labor relations.[8] We find, therefore, that the Board possesses statutory jurisdiction in this case.

---

7. Section 2(2) of the N.L.R.A., 29 U.S.C. § 152(2), provides, in relevant part:
   The term "employer" . . . shall not include the United States or any wholly owned Government corporation, . . . or any State or political subdivision thereof . . .

8. ADC argues only that it lacks control over the wages and benefits of its employees due to budgetary limitations imposed by its dependence on public funds. Neither the Illinois Department of Mental Health nor the Chicago Board of Education specifically limits ADC's employee compensation expenditures. The

fact that these agencies place an effective ceiling upon such expenditures by limiting ADC's total budget is not the type of control over ADC's labor relations required to invoke the section 2(2) exemption. *Herbert Harvey, Inc. v. N.L.R.B.,* 137 U.S.App.D.C. 282, 290–291, 424 F.2d 770, 778–79 (D.C.Cir.1969). Furthermore, the Board may require collective bargaining even where the employer's relationship to the exempt entity places it under substantial hardships in labor negotiations, as long as it retains some control over terms and conditions of employment. *Id.* 137 U.S.App.D.C. at 291, 424 F.2d at 779.

## IV

■ The Board is allowed broad discretion in choosing whether or not to exercise its statutory jurisdiction. *Pope Maintenance, supra,* 573 F.2d at 904; *N.L.R.B. v. Anthony, Inc.,* 557 F.2d 692, 695 (9th Cir. 1977); *Von Solbrig Hospital, Inc. v. N.L.R.B.,* 465 F.2d 173, 174 (7th Cir. 1972). The Board's decisions will not be reversed absent a showing that it acted unfairly and caused substantial prejudice to the affected employers. *N.L.R.B. v. Children's Baptist Home,* 576 F.2d 256, 260 (9th Cir. 1978); *Anthony, Inc., supra,* 557 F.2d at 695. In general, the Board must treat similar cases in a similar manner, *Herbert Harvey, Inc. v. N.L.R.B.,* 137 U.S.App.D.C. 282, 292, 424 F.2d 770, 780 (D.C.Cir.1969), but it may depart from previously established guidelines when to do so will, in the Board's judgment, effectuate the purposes of the Act. *Children's Baptist Home, supra,* 576 F.2d at 260–61 n. 3; *N.L.R.B. v. Wentworth Institute,* 515 F.2d 550, 555 (1st Cir. 1975).

### A

■ These principles illustrate the importance of properly classifying a jurisdictional limitation as statutory or discretionary. ADC's argument to the contrary notwithstanding, the so-called "intimate connection" test is not an aspect of section 2(2)'s statutory limitation on the Board's jurisdiction.[9] Rather, the courts clearly hold that the "intimate connection" test is one of the

Board's discretionary rules used to decline jurisdiction where the purposes of the Act will be furthered thereby. *Highview, Inc., supra,* 590 F.2d at 177–78; *Compton, supra,* 533 F.2d at 1275; *Herbert Harvey, Inc., supra,* 137 U.S.App.D.C. at 285–286, 424 F.2d at 773–74.

■ Where a private employer performs services for an exempt entity which are "intimately connected" with the functions of that entity, the Board has declined to exercise its statutory jurisdiction over the employer.[10] Contrary to ADC's assertion, the mere fact that the services are essential to the exempt entity's operations will not establish the requisite intimate connection; the services also must be interwoven and integrated with those operations. *Herbert Harvey, Inc., supra,* 137 U.S.App.D.C. at 294 n. 90, 424 F.2d at 782 n. 90. ADC has shown only that some of its employees must meet state certification requirements and that its facilities must comply with the building code. These restrictions in no way distinguish ADC from other government contractors and do not establish an intimate connection between the State Department of Mental Health and ADC.

ADC cites many decisions in which the Board declined jurisdiction because the employer was performing services which were intimately connected with the operations of an exempt political subdivision. We note only that none of the decisions cited involve employers providing services substantially

---

9. Several Board decisions suggest that the "intimate connection" test is statutory in origin. See, e. g., *Columbia Transit Corp.,* 226 N.L.R.B. 812, 814 (1976); *MTL, Inc.,* 223 N.L.R.B. 1071, 1072 (1976). These decisions speak in terms of the intimately connected private employers "sharing" the exempt entities' statutory exemptions. The recent decision in *National Transportation Service, Inc.,* 240 N.L.R.B. No. 64 (1979), clearly indicates that the Board recognizes the test as a discretionary limitation.

10. The Board recently indicated that it will no longer employ the intimate connection test. *National Transportation Service, Inc.,* 240 N.L.R.B. No. 64 (1979). ADC argues that this change in position is typical of the Board's vacillation in this area and requires that Board

decisions be given little deference by the courts. An administrative agency, however, must be allowed substantial flexibility to adapt its standards to changing conditions; it is not an abuse of discretion for the Board to change its policy with respect to matters within its jurisdiction. *N.L.R.B. v. Kent County Association for Retarded Citizens,* 590 F.2d 19, 23 (1st Cir. 1978). As discussed in the text, *infra,* the Board's actions in this case suggest no reason for treating its ruling with less deference than is usually accorded administrative agencies. Whether the change of policy announced in *National Transportation Service* is an abuse of the Board's discretion is an issue not presently before this court since both parties agree that the intimate connection test is still applicable to this case.

similar to those provided by ADC in this case. ADC has not shown substantial prejudice, nor has it shown that the Board treated similar cases differently; we cannot find, therefore, that the Board abused its discretion by exercising its statutory jurisdiction over ADC.

Our conclusion is in line with the recent decision of the Fifth Circuit in *Highview, Inc. v. N.L.R.B.*, 590 F.2d 174 (5th Cir.), *modified on other grounds*, 595 F.2d 339 (5th Cir. 1979). The employer in *Highview* was a nonprofit corporation providing nursing home care to the elderly. The Fifth Circuit upheld the Board's decision to exercise jurisdiction despite the existence of a substantially closer relationship between the employer and the State than is indicated by the record here. See *id.* at 176–78. The Fifth Circuit recognized, as does this court, that the Board's discretion is the overriding factor in such cases. *Id.* at 178–79. The Board may distinguish between cases on factual grounds and even may treat similar cases differently as long as it remains within a "zone of reasonableness." *Herbert Harvey, Inc., supra*, 137 U.S.App. D.C. at 295, 424 F.2d at 783. See also *Compton, supra*, 533 F.2d at 1275. The Board's action in this case is well within the "zone of reasonableness."

## B

Finally, ADC argues that the Board should have declined jurisdiction over it because its relationship to the Chicago Board of Education makes it an adjunct of the public school system. Board decisions recognize a discretionary limitation on the Board's jurisdiction where the employer provides special education services for a public school system in such a manner that the employer may be considered an "adjunct" of the school system. See, e. g., *Perkins School for the Blind*, 225 N.L.R.B. 1293 (1976); *Mitchell School, Inc. and Main Line Day School, Inc.*, 224 N.L.R.B. 1017 (1976); *Pennsylvania School for the Deaf*, 213 N.L.R.B. 513 (1974). These decisions are, according to ADC, indistinguishable from the present case.

The rationale underlying these decisions is that where a public entity is required by statute to provide certain services and chooses to satisfy this obligation by contracting with a private employer, the private employer should be exempt from Board jurisdiction because it is functioning, in effect, as a public agency. To invoke this exemption, the private employer must show more than that it provides the statutorily mandated services; the exemption is applicable only where the public agency chooses contracting with private employers as the primary means of satisfying its statutory obligation. *George Junior Republic*, 224 N.L.R.B. 1581, 1582 (1976). It cannot be said that the private employer is acting in the place of the public agency where the public agency itself provides a substantial part of the required services; therefore, in such a case, the private employer is not entitled to an exemption. ADC concedes that the Chicago Board of Education "operates many special education programs" itself and that ADC merely handles some of the overflow from these programs. ADC Brief at 35–36. This factor alone amply distinguishes ADC from the schools involved in *Perkins School, supra; Pennsylvania School, supra;* and *Mitchell School, supra*.

Furthermore, ADC failed to show compliance with the requirements of the "adjunct" exemption in another respect. The Board has held that in order to qualify for exemption the private school must show direct and substantial control over its operations by the contracting public agency. *Perkins School for the Blind, supra*, 225 N.L.R.B. at 1294–95; *George Junior Republic, supra*, 224 N.L.R.B. at 1582. As discussed in the preceding section of this opinion, the record in this case shows only minimal control over ADC on the part of either the Board of Education or the Department of Mental Health; ADC's showing falls far short of the required direct and substantial control. ADC thus failed to bring itself within the adjunct exemption in two respects; the Board, therefore, did not act inconsistently with its own standards in exercising jurisdiction.

The Board possesses statutory jurisdiction in this case and did not abuse its discretion in choosing to exercise it. This court accordingly grants the Board's application for enforcement of its order against ADC.