NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CHICAGO YOUTH CENTERS, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

The CHASE HOUSE, INC., Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

YOUNG WOMEN'S CHRISTIAN ASSOCIATION, Respondent.

Nos. 79–1739, 79–1429 and 79–1464.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1980.

Decided March 13, 1980.

Christopher Katzenbach and Eric G. Moskowitz, N. L. R. B., Washington, D. C., for petitioner.

Charles E. Murphy, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for Chicago Youth Centers.

Edward Parsons, Chicago, Ill., for Chase House, Inc.

Mark J. Friedman, Chicago, Ill., for YWCA.

Before SWYGERT and TONE, Circuit Judges, and BUA, District Judge.*

PER CURIAM.

These three cases are governed by our recent decision in *Lutheran Welfare Services v. NLRB*, 607 F.2d 777 (7th Cir. 1979). In that decision the court ruled on both the same Model Cities Headstart program that is involved in the *Chicago Youth Centers* and *Chase House* cases at bar and the same Model Cities Title XX Daycare program that is involved in the *YWCA* case at bar.[1]

The decisive factor under *Lutheran Welfare* is the extent of the public agency's control over the labor relations of the private agency. In the cases before us that control begins with funding, governs job classifications and compensation for each job, and extends to the minutest details of job performance and other terms and conditions of employment. Although theoretically the private agencies in the cases before us might divert funds from their other charitable activities to increase the compensation of employees in the programs, they have chosen not to do so, with *de minimis* exceptions. As a practical matter all the money for these programs, which are operated separately from the other activities of the private agencies, comes from Model Cities.[2] Because of Model Cities' pervasive control over the labor relations of the private agencies, any bargaining they conducted would in effect be done on behalf of Model Cities. Under such circumstances, *Lutheran Welfare* holds, Model Cities is a joint employer with the private agency, and the latter shares the former's exemption under § 2(2) of the National Labor Relations Act, 29 U.S.C. § 152(2).

---

* The Honorable Nicholas J. Bua, District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. The Headstart program is administered pursuant to 42 U.S.C. § 2928; the Daycare program is based upon Title XX of the Social Security Act, 42 U.S.C. § 1397 et seq.

2. Headstart regulations limit federal funding to 80% of the approved costs of a program. 45 C.F.R. § 1301.20 (1979). The remaining 20% is generally covered by cash or in-kind contributions by the grantee designated by HEW, here Model Cities-Chicago Committee on Urban Opportunity, an agency of the City of Chicago, or the delegate agency, here CYC and Chase House. CYC contributes 20% of the approved costs of its program in kind by providing its own facilities, volunteer time, and donated educational supplies. Similarly, the non-federal 20% of the costs of the Chase House programs is covered through in-kind contributions, which include the provision by three churches of facilities for the centers. Neither CYC nor Chase House normally provides funds for operating expenses.

Title XX requires no in-kind or cash contributions toward the operation of the daycare centers by the YWCA. The federal government pays 75% of the program's costs, the City of Chicago the remaining 25%. The YWCA has in fact provided some in-kind contributions.

*NLRB v. Austin Development Center, Inc.,* 606 F.2d 785 (7th Cir. 1979), decided six days before *Lutheran Welfare,* is distinguishable from the latter and from the cases at bar. *Austin Development* involved different public agencies and a different program. The private agency in that case failed to show "that it lack[ed] effective control over its own labor relations," *id.* at 789, having argued "only that it lacks control over the wages and benefits of its employees due to budgetary limitations imposed by its dependence on public funds," a fact which the court said "is not the type of control over [the private agency's] labor relations required to invoke the section 2(2) exemption," *id.* at 789 n.8.

Enforcement is denied in all three cases.