STAFF BUILDERS SERVICES, INC.,
Petitioner/Cross–Respondent,
v.
NATIONAL LABOR RELATIONS
BOARD,
Respondent/Cross–Petitioner,
and
Local 880, Service Employees International Union, AFL–CIO, CLC,
Intervening Respondent.
Nos. 88–2308 and 88–2514.
United States Court of Appeals,
Seventh Circuit.
Argued June 9, 1989.
Decided July 13, 1989.

Aileen A. Armstrong, Frederick Havard, Collis Suzanne Stocking, Washington, D.C., Donald J. Crawford, N.L.R.B., Chicago, Ill., for N.L.R.B.

R. Clay Bennett, Keck, Mahin & Cate, Joel A. D'Alba, Lester Asher, Asher, Paval-on, Gittler & Greenfield, Chicago, Ill., for Staff Builders Services, Inc.

Before FLAUM and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Staff Builders Services, Inc., provides "homemaker" and "chore housekeeper" services to elderly and disabled residents of Illinois under contract with three governmental agencies. The homemakers and chore housekeepers, who are paid little more than the minimum wage, asked the National Labor Relations Board to hold an election so that they could decide whether to be represented by a union. The union prevailed at the election in June 1984. Five years later, Staff Builders has yet to bargain with the union. Its sole excuse is that the NLRB does not have jurisdiction, given the influence governmental agencies exercised over its employment policies. In 1986 the Board certified the union as the representative of the homemakers and chore housekeepers. When Staff Builders refused to bargain, the Board tarried another two years before holding that Staff Builders had committed an unfair labor practice —a mechanical conclusion with no function other than to clear the way for judicial review of the decision taken in 1986.

■ If Staff Builders were a public agency, the NLRB could not order it to bargain with a union. 29 U.S.C. § 152(2). Staff Builders is not "any State or political subdivision thereof", however. It is a for-profit corporation selling services to governmental bodies under contracts designating it as a "contractor", and to private persons as well (some 8% of its sales are in the private sector). Staff Builders hires, trains, assigns, directs, supervises, disciplines, and fires its workers, maintaining at least as much control over them as the Court held in *NLRB v. E.C. Atkins & Co.*, 331 U.S. 398, 412–13, 67 S.Ct. 1265, 1272–73, 91 L.Ed. 1563 (1947), made for private employment. See also, e.g., *Jefferson County Community Center for Developmental Disabilities, Inc. v. NLRB*, 732

F.2d 122 (10th Cir.1984); *Golden Day Schools, Inc. v. NLRB*, 644 F.2d 834 (9th Cir.1981). The agencies decided what kind of services they were willing to provide to their clients and to that end specified rules (including maximum hours per person per client per day) governing the work. Many employers of independent contractors do the same. Just as extensive state regulation of a private activity does not create "state action", *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), so too extensive control by a governmental purchaser does not make the seller a part of the government. If governmental control "extends to the minutest details of job performance and other terms and conditions of employment", *NLRB v. Chicago Youth Centers*, 616 F.2d 1028, 1029 (7th Cir.1980), see also *Lutheran Welfare Services of Illinois v. NLRB*, 607 F.2d 777 (7th Cir.1979), then the state will be treated as a joint employer with the nominally "private" entity, but the state's control of Staff Builders stops well short of that mark. Staff Builders is covered by the statute.

■ The Board does not exercise jurisdiction over the labor relations of every covered private employer. If governmental control of labor relations is so intrusive that the employer lacks control over a "core group" of "basic bargaining subjects", the Board will leave employer and employees to their own devices. *Res–Care, Inc.*, 280 N.L.R.B. No. 78 (1986), sets out the Board's current position on the subject. Staff Builders maintains that the Board should have declined jurisdiction under the principles of *Res–Care.*

■ Once the Board has *statutory* jurisdiction, however, its exercise in a particular employer's case is a matter of resource allocation. Not having a staff large enough to investigate every claim, the Board must decide where to devote its energies. The four years the Board took to resolve this simple case testify to its overcrowded docket. If the terms and conditions of employment at a given firm are so dominated by state law that as a prac-

tical matter the existence of a union will make no difference, then it would be a waste of time for the Board to superintend its labor relations. So if Illinois law provided that Staff Builders' homemakers and housekeepers must be paid the same wages as the state pays to its own employees in these categories, and enjoy fringe benefits and conditions of like quality, it would be pointless to direct Staff Builders to bargain with the union. What could come of such a sterile encounter? In *Res–Care* itself the state required the employer to propose wage and fringe benefit packages, which the state then approved or rejected. See also *Correctional Medical Systems*, 289 N.L.R.B. No. 103 (1988). Unions do not waste their resources organizing the workers of firms that cannot accommodate their demands, however, so it is not surprising that the Board rarely declines jurisdiction on the ground that the state sets the key terms and conditions of employment.

More frequently employers contend that the state has some but not total control and ask the Board to stand aside. Whether the Board honors such a request may depend on the state of its backlog. If it is current with its docket and flush with staff, the Board might take jurisdiction over every employer meeting the statutory minima; if it cannot decide even the cases in which the employer unquestionably sets wages and working conditions, it is less attractive to sink time into the labor affairs of a firm hamstrung by governmental demands. Asserting jurisdiction thus may be more attractive one year than the next, depending on the menu of other cases needing attention. Such decisions entail prosecutorial discretion, and members of the Board rather than judges are the right persons to make them. Whether the prosecutor takes the case, *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), or declines to do so, *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the judicial role is distinctly limited —if there is any. We held in *State Bank of India v. NLRB*, 808 F.2d 526, 536–37 (7th Cir.1986), and *NLRB v. Austin Developmental Center, Inc.*, 606 F.2d 785, 790 (7th Cir.1979), that the Board's discretion-

ary exercise of jurisdiction may be disturbed only if some unfair act "caused substantial prejudice to the affected employers"—if, perhaps, the Board led the employer to rely to its detriment on an announced policy and then pulled the rug from under it, or if it acted whimsically (asserting jurisdiction over firms incorporated in Wisconsin but not in Indiana).

■ There is nothing arbitrary about the decision to certify a union of Staff Builders' employees. No regulations govern Staff Builders' wages, fringe benefits, or many other matters about which a union might wish to bargain. Although two of the three agencies require Staff Builders to submit extensive details that include either actual wages or a range within which wages fall, nothing in the record suggests that the agencies want to fix the wages received, as opposed to using the data to dicker for a lower price. Cf. *Long Stretch Youth Home, Inc.*, 280 N.L.R.B. No. 79 (1986). Staff Builders emphasizes that one of the three customers, accounting for the majority of its business, makes the application (which contains the wage data) part of the contract: "the application, in its entirety, will be incorporated with the Purchase of Service Agreement and your agency is held accountable for its content." This could be read to mean that Staff Builders must pay exactly the wages in its submission, but it also could be read to say only that Staff Builders must do what it promised. (The application contains many representations about how the firm will achieve the state's objectives.) Illinois would be concerned if Staff Builders paid its workers less than promised—not only because lower wages mean less-skilled workers but also because the state might have driven a harder bargain had it known that Staff Builders could hire staff for less. None of the parties has suggested any reason why the state would care if the bidder paid more.

The NLRB was not required to believe—and it did not believe—that Illinois set a cap on wages, that if Staff Builders had been content to pay workers more and make a smaller profit, the agencies would have annulled the contracts or sued Staff Builders for breach. Anyway, why should it matter whether any given contract set a maximum wage? None of the contracts runs for more than a year. Workers would be concerned about the wage Staff Builders used as the basis for its next bid. As Staff Builders sees things, Illinois locks it into its own wage schedule year-by-year. Negotiations about the contents of that schedule may precede the bidding season. As the agencies will allow Staff Builders to pay more next year, there is plenty for Staff Builders and the union to bargain about now. Collective bargaining agreements often run for three years. That the employer then may be "locked into" wages for years to come hardly shows that the union serves no further purpose! Staff Builders' workers voted for the union in June 1984. Had Staff Builders commenced to bargain, the results would have been incorporated into four years' worth of contracts. Cf. *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976) (the "filed rate doctrine" does not prevent a judgment under the antitrust laws when the firm decides for itself what terms to propose).

■ The Board did not go off the deep end in taking jurisdiction, so its order must be enforced. The union asks us to award attorneys' fees as a penalty under Fed.R. App.P. 38, a request the Board does not join. Certainly the union has suffered from a combination of the Board's bureaucratic delay and the employer's adversarial ardor. Staff Builders' brief in this court cites nary a judicial decision, and after both the NLRB and the union cited cases showing that our review of the Board's decision to exercise discretion in favor of asserting jurisdiction is exceedingly deferential, Staff Builders ignored those cases in its reply brief. Such a head-in-the-sand approach has no prospect of success. On the other hand, the more feeble the attack, the less need for the union to add its voice to the Board's defense of its own decision. Cf. *Brooks v. Allison Division of General Motors Corp.*, 874 F.2d 489 (7th Cir.1989). Staff Builders had a chance: the Board had not discussed the regulation requiring the terms of Staff Builders' proposal to be

made part of the contract, and any time an agency omits discussion of an evidentiary point there is at least some chance the court will remand. So although Staff Builders was skating on thin ice, we deny the request for sanctions.

ENFORCED